# UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF MICHIGAN

_____

JOHN HEYKOOP D/B/A EAGLE TOWING,

    Plaintiff,

v

MICHIGAN STATE POLICE, and CAPT. DAVID ROESLER, COMMANDER, DISTRICT 6, MICHIGAN STATE POLICE; FIRST LIEUTENANT JEFFREY WHITE; FIRST LIEUTENANT CHRIS MCINTIRE.

    Defendants.
_____/

Case No. ____-cv-_____

Hon. _____
Mag. _____

John S. Brennan (P55431)
Christopher S. Patterson (74350)
FAHEY SCHULTZ BURZYCH RHODES PLC
Co-Counsel for Defendant
4151 Okemos Road
Okemos, Michigan 48864
Tel: (517) 381-0100
Fax: (517) 381-5051
jbrennan@fsbrlaw.com
cpatterson@fsbrlaw.com
_____/

## COMPLAINT AND JURY DEMAND

Plaintiff, John Heykoop, doing business as Eagle Towing. ("Heykoop" or "Plaintiff"), through his attorneys Fahey Schultz Burzych Rhodes PLC as and for its complaint against Defendants Michigan State Police ("MSP") and Capt. David

Roesler ("Roesler"), First Lieutenant Jefferey White ("White") and First Lieutenant Chris McIntire ("McIntire") (collectively "Defendants"), states as follows:

## JURISDICTION AND VENUE

1. This Court has original jurisdiction over this case pursuant to 28 U.S.C. § 1331, as it arises under the Constitution and laws of the United States.

2. This Court has supplemental jurisdiction over Count V of this Complaint under 28 U.S.C. § 1367.

3. Venue is proper in this judicial district under 28 U.S.C. § 1391, as the Defendants reside within this judicial district and a substantial portion of the events giving rise to Plaintiff's claims occurred within this judicial district.

## PARTIES AND COMMON FACTS

4. Plaintiff operates a towing business under the name of "Eagle Towing." Plaintiff has been in the business as a vehicular towing, storing and recovery company for 73 years.

5. Defendant MSP is an agency of the State of Michigan.

6. Defendant Roesler is a captain and the commander of District 6 - West, which includes Michigan State Police Posts located in Rockford, MI and Hart, MI.

7. Defendant White is a first lieutenant and commander of the Hart #66 Michigan State Police Post.

8. Defendant McIntire is a first lieutenant and commander of the Rockford #61 Michigan State Police Post.

9. The Hart and Rockford MSP Posts maintain what is commonly called a No-Preference Wrecker Rotation List, ("No-Pref List") which is a list of towing companies that MSP officers use to call for wrecker services in situations where the driver or owner of a vehicle in need of such services does not or cannot express a preference for a particular towing company.  Examples include stranded or abandoned vehicles on the public highways, accident situations, or vehicles that are illegally parked or located on public or private property.

10. MSP Posts are governed by a Department Policy known as Official Order No. 48, which concerns towing, reporting, inspection and state-wide wrecker policy. A true and correct copy of this Official Order is attached to this Complaint as Exhibit A.  This policy governs placement on the No-Pref List.

11. Until November 13, 2017, Plaintiff was placed on the No-Pref List and provided services in response to calls without incident.

12. In June 2015 it came to Plaintiff's attention that fees collected for salvage title inspections were being mishandled by Robert Wilson, then the Chief of Police for the Village of Shelby in Oceana County.  Wilson was a close friend of Oceana Sheriff, Craig Mast.

3

13. Plaintiff reported information regarding Wilson's conduct to several authorities, including the Oceana Prosecuting Attorney. Wilson was convicted and sentenced in June 2017.

14. Following the report of Wilson's criminal conduct, the State Attorney General commenced an investigation of salvage title inspection fees statewide. Several MSP officers have either been charged or convicted of the same conduct.

15. On or about November 9, 2017, Sheriff Mast removed Plaintiff from its wrecker rotation. On the same day he sent an email to Defendant White advising him to do the same. The removal was allegedly based on one complaint from a vehicle owner over Plaintiff's customary charges, which had been properly submitted to and paid without objection by the owner's automobile insurance carrier.

16. On or about November 13, 2017, Defendant White sent a letter to Plaintiff informing Plaintiff that the Hart Post was removing Plaintiff from its No-Pref List. This letter did not refer to or mention any violation of Official Order 48, but rather stated the reason for removal as "the quality and type of service" provided by Plaintiff within the Post area. No other specifics were provided, nor was Plaintiff ever given an opportunity to respond to any concerns regarding the same. A copy of this letter is attached as Exhibit B.

17. Subsequent to Defendant White's letter, Defendant McIntire also removed Plaintiff from the No-Pref List, for the Rockford Post, also without cause.

4

18. Two weeks before Plaintiff's removal from the No-Pref List, Plaintiff was requested by name to a stand-off scene with over 75 troopers that had vehicles stuck 2 miles into the woods in sand. The incident commander requested Plaintiff to remove them as Plaintiff was the only towing company in the area that had this capability in-house. MSP was not charged for those services, and Plaintiff never recouped its costs from anyone for this work that took 8 hours x 4 staff members in order to accommodate MSP's needs.

19. The stated reason in Sheriff Mast's and Defendant White's letters for Plaintiff's removal is a pretext; the true reason for the removal is retaliation for Plaintiff's having reported law enforcement, and Sheriff Mast's personal friend, in particular, for improper handling of salvage title inspection fees.

20. Following its removal from the MSP No-Pref List (Rockford and Hart Posts) Plaintiff attempted to obtain an application under Official Order 48 to be placed on the list. Plaintiff sent both Defendant McIntire and Defendant White certified mail with a request for an application. Plaintiff's letter to McIntire was refused on both March 5, 2018 and March 10, 2018, and then returned to Plaintiff. Plaintiff's certified letter to Defendant Roesler was also refused on March 5, 2018 and returned to Plaintiff. Copies of the returned correspondence is attached as Exhibit C.

21. Subsequently, Plaintiff obtained an application through its attorney and submitted it by email to all Defendants on or about March 28, 2018. Plaintiff met

all the requirements of Official Order No. 48; however, no response was ever received. A copy of this email with attachments is attached as Exhibit D.

22. Upon information and belief, other towing companies within the Rockford and Hart Posts enjoy placement on the No-Pref List, and receive service calls as result of such placement, yet they do not meet the requirements of Official Order No. 48.

23. On April 26, 2018, Plaintiff, through its attorney, sent a letter to Defendant Roesler and MSP (sent to its Director, Col. Kriste Kibbey Etue and copied to Steven Beatty, In-house Counsel), requesting that action be taken on Plaintiff's application. No action has been taken in response to this letter. A copy of this letter is attached as Exhibit E.

24. Plaintiff has a contractual agreement with Electric Forest, LLC to provide towing services on private property during the music festival known as "Electric Forest" to be held June 28 – July 1, 2018. This agreement is attached as Exhibit F.

25. Upon information and belief, Defendant White stated during a 911 Dispatch Committee Meeting that he will refuse to permit Plaintiff to render wrecker services pursuant to its contract at the Electric Forest Music Festival this year.

COUNT I -- VIOLATION OF EQUAL PROTECTION ((42 U.S.C § 1983)

26. Plaintiff incorporates all prior paragraphs.

27. The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States . . . nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

28. Defendant's conduct violates Plaintiff's right to equal protection of the laws; specifically, Plaintiff's right not to be treated arbitrarily or based upon animus by Defendants.

29. Defendants have intentionally treated Plaintiff differently from others similarly situated, and there is no rational basis for the difference in treatment.

30. Other towing companies and businesses within the Rockford and Hart Posts have not been subjected to this discriminatory and unequal treatment.

31. The unequal treatment of Plaintiff was the result of intentional and purposeful discrimination against Plaintiff.

32. As a direct and proximate result of the above, Plaintiff has suffered damages and irreparable harm, and continues to suffer damages on a daily basis, consisting of loss of business and revenue, injured reputation in the community, and the threat of losing the benefits of a valid contractual relationship.

33. Pursuant to 42 U.S.C. § 1988, Plaintiff requests an award of reasonable attorney's fees as part of the costs associated with the enforcement of a provision of § 1983.

WHEREFORE, Plaintiff, respectfully requests this Honorable Court enter a Final Judgment against Defendants:

    a. Awarding compensatory damages in excess of $100,000, prejudgment interest, attorney's fees, and costs;

    b. Entering an injunction, preliminarily and permanently enjoining Defendants from violating Plaintiff's rights under the U.S. and Michigan Constitutions, from enforcing any policies found to violate Plaintiff's constitutional rights, ordering Defendants to place Plaintiff back on the No-Pref List and treating Plaintiff similarly to other towing companies with regard to service calls;

    c. Awarding such other and further relief in law or equity as this Court may deem just and proper.

## COUNT II – FIRST AMENDMENT RETALIATION CLAIM (42 U.S.C § 1983)

34. Plaintiff incorporates all prior paragraphs.

35. Petitioning the government is protected activity under the First Amendment, and is a clearly established constitution right under both the United States and Michigan Constitutions.

36. The Defendants removed Plaintiff from the No-Pref List in cooperation with the Oceana County Sheriff and in retaliation for Plaintiff's reporting law enforcement of suspected wrongful activity in processing salvage title inspection fees.

37. Plaintiff's action in reporting the wrongful conduct was protected activity.

38. Since Defendants' wrongful removal of Plaintiff from the No-Pref List, Defendants have engaged in other retaliatory acts, including:

   a. Refusing/rejecting certified letters sent by Plaintiff that requested forms for being restored to the No-Pref List;

   b. Refusing to process Plaintiff's duly presented application to be placed on the No-Pref List;

   c. Refusing to respond to Plaintiff's letter demanding to be placed on the No-Pref List;

   d. Declaring an intention to interfere with Plaintiff's contractual relationship regarding a private property towing agreement.

39. A reasonable person in Defendants' positions would have understood that the actions taken by Defendants described herein were retaliatory and violated Plaintiff's rights.

40. Defendants operated under color of law in retaliating against Plaintiff.

41. The action taken against Plaintiff would deter a person of ordinary firmness from continuing to engage in conduct asserting their First Amendment rights.

42. Plaintiff's protected activity motivated Defendants' actions described herein.

43. The actions taken by Defendants were authorized by Defendant MSP acting under color of law, and policy-making officials, or persons acting through delegated authority and under color of law, including Defendants White, McIntire and Roesler, made the decisions to retaliate against Plaintiff.

44. As a direct and proximate result of the above, Plaintiff has suffered damages and irreparable harm, and continues to suffer damages on a daily basis, consisting of loss of business and revenue, injured reputation in the community, and the threat of losing the benefits of a valid contractual relationship.

45. Pursuant to 42 U.S.C. § 1988, Plaintiff requests an award of reasonable attorney's fees as part of the costs associated with the enforcement of a provision of § 1983.

WHEREFORE, Plaintiff, respectfully requests this Honorable Court enter a Final Judgment against Defendants:

 a. Awarding compensatory damages in excess of $100,000, prejudgment interest, attorney's fees, and costs;

 b. Entering an injunction, preliminarily and permanently enjoining Defendants from violating Plaintiff's rights under the U.S. and Michigan Constitutions, from enforcing any policies found to violate Plaintiff's constitutional rights, ordering Defendants to place Plaintiff back on the No-Pref List and treating Plaintiff similarly to other towing companies with regard to service calls;

 c. Awarding such other and further relief in law or equity as this Court may deem just and proper.

## COUNT III – PROCEDURAL DUE PROCESS (42 U.S.C § 1983)

46. Plaintiff incorporates all prior paragraphs.

47. 42 U.S.C. § 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

48. Plaintiff has a protected property interest in its placement on the No-Pref List pursuant to MSP policy as set out in Official Order 48.

49. Plaintiff was entitled to rudimentary due process before it could be removed from the No-Pref List.

50. Rudimentary due process has four requirements:

    a. The government must provide a timely written notice that details the reasons for the proposed action;

    b. An effective opportunity to defend by confronting adverse witnesses and being allowed to present witnesses, evidence, and arguments;

    c. A hearing examiner other than the person(s)/body that made the decision or determination under review; and,

    d. A written statement of findings.

51. Defendants did not provide Plaintiff with timely written notice that detailed the reasons for their action against Plaintiff.

52. Defendants did not provide Plaintiff with an opportunity to defend by confronting adverse witnesses and being allowed to present its own witnesses, evidence and arguments.

53. Defendants did not provide for a hearing examiner to review the decision that affected Plaintiff.

54. Defendants failed to provide Plaintiff a written statement of any findings.

55. The actions taken by Defendants were authorized by Defendant MSP acting under color of law, and policy-making officials, or persons acting through delegated authority and under color of law, including Defendants White, McIntire and Roesler, made the decisions to retaliate against Plaintiff.

56. Defendants' conduct deprived Plaintiff of its Due Process under the law.

57. As a direct and proximate result of the above, Plaintiff has suffered damages and irreparable harm, and continues to suffer damages on a daily basis, consisting of loss of business and revenue, injured reputation in the community, and the threat of losing the benefits of a valid contractual relationship.

58. Pursuant to 42 U.S.C. § 1988, Plaintiff requests an award of reasonable attorney's fees as part of the costs associated with the enforcement of a provision of § 1983.

WHEREFORE, Plaintiff, respectfully requests this Honorable Court enter a Final Judgment against Defendants:

    a. Awarding compensatory damages in excess of $100,000, prejudgment interest, attorney's fees, and costs;

    b. Entering an injunction, preliminarily and permanently enjoining Defendants from violating Plaintiff's rights under the U.S. and Michigan Constitutions, from enforcing any policies found to violate Plaintiff's constitutional rights, ordering Defendants to place Plaintiff back on the No-

Pref List and treating Plaintiff similarly to other towing companies with regard to service calls;

c. Awarding such other and further relief in law or equity as this Court may deem just and proper.

## COUNT IV – CONSPIRACY TO VIOLATE CONSTITUTIONAL RIGHTS
### (42 U.S.C § 1983)

59. Plaintiff incorporates all preceding paragraphs.

60. Defendants, acting under color of law, conspired to deprive Plaintiff of federally protected rights, including the right to petition the government under the First Amendment.

61. The conspiracy involved state action.

62. The object of the conspiracy was to silence, harm, punish, intimidate, and scare Plaintiff, among other objects.

63. Plaintiff was deprived of its civil rights in furtherance of the conspiracy.

64. As a direct and proximate result of the above, Plaintiff has suffered damages and irreparable harm, and continues to suffer damages on a daily basis, consisting of loss of business and revenue, injured reputation in the community, and the threat of losing the benefits of a valid contractual relationship.

65. Pursuant to 42 U.S.C. § 1988, Plaintiff requests an award of reasonable attorney's fees as part of the costs associated with the enforcement of a provision of § 1983.

WHEREFORE, Plaintiff, respectfully requests this Honorable Court enter a Final Judgment against Defendants:

   a. Awarding compensatory damages in excess of $100,000, prejudgment interest, attorney's fees, and costs;

   b. Entering an injunction, preliminarily and permanently enjoining Defendants from violating Plaintiff's rights under the U.S. and Michigan Constitutions, from enforcing any policies found to violate Plaintiff's constitutional rights, ordering Defendants to place Plaintiff back on the No-Pref List and treating Plaintiff similarly to other towing companies with regard to service calls;

   c. Awarding such other and further relief in law or equity as this Court may deem just and proper.

### COUNT V – TORTIOUS INTERFERENCE WITH A BUSINESS EXPECTANCY AND RELATIONSHIP
(Defendants MSP and White)

66. Plaintiff incorporates all preceding paragraphs.

67. Defendants MSP and White knew of Plaintiff's contract with Electric Forest LLC.

68. Defendants MSP and White intentionally and improperly interfered with Plaintiff's expectancy and contractual relationship by declaring at an open meeting that the State Police would not honor Plaintiff's contract to provide towing services

15

on private property and would not permit Plaintiff to provide such services where MSP personnel were involved.

69. Defendants committed a per se wrongful act, with malice and without justification for the purpose of invading Plaintiff's business relationship.

70. Unless enjoined by this Court, Defendants actions will result in a breach, disruption, or termination of Plaintiff's contractual relationship or expectancy, damaging Plaintiff's business reputation and causing irreparable harm.

WHEREFORE, Plaintiff requests that this Court enter an injunction against Defendants MSP, White and White's supervisor, Defendant Roesler, restraining them from interfering with Plaintiff's contractual relationship with Electric Forest LLC, and honoring Plaintiff's exclusive right to provide towing services on the private property described in Plaintiff's contract.

Plaintiff hereby demands trial by jury.

Respectfully submitted,

FAHEY SCHULTZ BURZYCH RHODES PLC
Counsel for Plaintiff

Dated: June 5, 2018         By: __/s/John S. Brennan_____
                                John S. Brennan (P55431)
                                4151 Okemos Road
                                Okemos, Michigan 48864
                                (517) 381-0100
                                jbrennan@fsbrlaw.com