## AGREEMENT FOR SERVICES

THIS AGREEMENT FOR SERVICES (this "Agreement") is made effective as of the later of the dates set forth below the signatures below (the "Effective Date") by and between **Electric Forest, LLC** ("Electric Forest" or "Producer") and **John E. Heykoop DBA Eagle Towing + Recovery** ("Company").

### RECITALS

A.  Electric Forest is the Producer of a live music festival known as "Electric Forest" to be held in Rothbury, Michigan at the Double JJ Ranch & Golf Resort (the "Premises") on Thursday June 21, 2018 to Sunday June 24, 2018 and Thursday June 28, 2018 to Sunday July 1, 2018, (both weekends collectively referred to as the "Event").

B.  Producer desires to engage Company for services in connection with Event, and Company desires to provide such services, on the terms and conditions set forth in this Agreement.

### AGREEMENT

In consideration of the mutual covenants that are contained in this Agreement, the parties hereto hereby agree as follows:

1.  **SCOPE OF SERVICES.** Producer hereby engages Company, and Company hereby agrees, to provide the services more fully described on Exhibit A attached hereto and made a part hereof (the "Services"):

    1.1  Company shall provide all personnel required in order to provide the Services.

    1.2  Except for those items, if any, expressly required by this Agreement to be furnished by Producer, Company shall furnish or provide all of the materials (including equipment and supplies, uniforms, communication equipment and any other equipment) and all other items necessary to perform the Services and to carry out and perform all of Company's obligations under or pursuant to this Agreement. Company hereby acknowledges that total Compensation (as defined below) set forth on Exhibit B is inclusive of all materials and transportation required to provide the Services.

    1.3  Upon request from Producer, Company shall immediately reassign or remove from the performance of the Services hereunder any of its employees or personnel supplied by Company, including any supervisory personnel, who, in the sole judgment of Producer, engage in improper conduct, are not suitably attired or neatly groomed, or are not otherwise, in the reasonable judgment of Producer, suitable or acceptable to perform the Services or any tasks assigned to them.

    1.4  Company shall comply with and conform to all rules, regulations and directives issued by Producer or their designees from time to time and shall cause its Representatives (as defined below) to comply with and conform to all of the same. If applicable, upon the expiration or sooner termination of this Agreement, Company shall promptly remove all of its materials from the location(s) of the Event.

    1.5  If necessary for Company to fulfill its obligations hereunder, Producer will give Company that number of tickets or passes to the Event determined by Producer after consulting with Company for Company's employees actually working at the Event. Any resale, distribution, transfer or misuse of such Event tickets or passes is strictly prohibited and breach of this provision will be a material breach hereunder. In addition, Company shall be charged the value of any tickets or passes transferred in breach of this provision.

Company Initials / Producer Initials

2.  **TERM.** The term of this Agreement shall commence as of the Effective Date hereof and shall continue through **Wednesday August 1, 2018**, unless sooner terminated in accordance with the terms and conditions of this Agreement.

3.  **COMPENSATION.** As full and complete compensation for all of the Services to be provided by Company pursuant to this Agreement, Producer shall remit payment to Company as more fully described on Exhibit B attached hereto and made a part hereof (the "Compensation"). Except as otherwise set forth on Exhibit B, all sums due to Company under this Agreement shall be paid by Producer to Company within thirty (30) days following receipt by Producer of an invoice from Company fully describing the work performed, including the number of hours worked by Company personnel, if applicable, and the compensation due to Company, if any.

4.  **SAFETY AND LEGAL REQUIREMENTS; AUTHORITY.** Without in any way limiting any other term or provision of this Agreement or any obligation of Company hereunder, Company shall do or cause to be done all of the following: (a) perform the Services in a first-class manner that shall protect the health and safety of Company and Producer employees, agents and the public generally; (b) comply with all laws, policies, rules, and regulations applicable to the Services; (c) if an authorized management person of Producer is not available, then contact the proper local authorities for assistance when such assistance is appropriate for safety; and (d) obtain, maintain and comply with all licenses, permits, franchises and approvals from any governmental authority that may be required to enable Company to perform all of the Services and fulfill all of its obligations under this Agreement; and (e) understand that Producer relying on Company's expertise in the performance of the Services, ensure Company's employees, subcontractors and personnel comply with best practices for its industry; (f) if the Services include erection of any structure at the Event, prior to the commencement of the first presentation of the Event, Company shall provide to Producer a certificate from a qualified engineer certifying that or to the effect that any structure erected for the purpose of the staging of the Event complies with all relevant regulatory requirements and consents and is otherwise soundly constructed and safe having regard to the purpose for which it was constructed. Company represents and warrants that (a) it has the full right and authority to enter into and fully perform this Agreement in accordance with its terms, (b) this Agreement constitutes a valid, binding and enforceable agreement of Company, (c) the execution, delivery and performance of this Agreement will not violate the provisions of any agreement to which it is a party or by which it is bound, and (d) each of its employees, subcontractors, or other representatives who will be operating a motor vehicle, heavy machinery, or similar equipment are duly licensed to do so and have no history of reckless operation, or drug or alcohol convictions.

5.  **EQUIPMENT WARRANTY.** If the furnishing or provision of equipment is part of the Services, Company hereby represents, warrants and covenants that: (a) all equipment will be free from defects in workmanship and material and conform in all material respects to all specifications provided by this Agreement, (b) all equipment shall be of high quality material and shall be free of liens and encumbrances except for liens or encumbrances arising in the normal course of business by operation of law that are not at the particular time in question due and delinquent, (c) the equipment shall comply with all laws and regulations applicable to the equipment, and (d) the equipment is fit for its intended purpose.

6.  **INDEMNIFICATION.** Company agrees to indemnify, defend and forever save and hold harmless the Producer, its affiliates or related entities, artist(s), co-promoters (if any), the venue, and sponsors and their respective principals, shareholders, members, partners, officers, directors, employees, representatives, tenants, agents, contractors and volunteers (sometimes collectively referred to herein as the "Indemnitees" and individually as a "Indemnitee"), from and against any and all damages, claims, losses, demands, costs, expenses (including attorneys, fees and costs), obligations, liens, liabilities, actions and causes of action, threatened or actual, which any one of the Indemnitees may suffer or incur arising directly or indirectly out of or in connection with the performance of the Services or the failure of Company or its officers, directors, shareholders, owners, employees, representatives, agents, contractors or volunteers ("Representatives") to perform the Services in accordance with the terms of this Agreement, except to the extent arising from the gross negligence or willful misconduct of Producer. The foregoing indemnification shall survive any termination or the expiration of the term of this Agreement.

*JEH* — *JS*
Company   Producer
Initials   Initials

7. **INSURANCE.** Without in any way limiting or altering the indemnification requirements of Company under or pursuant to this Agreement, Company shall, at its sole expense, procure and at all times maintain during the term of this Agreement all of the following insurance: (a) Commercial general liability insurance with a limit of not less than $1,000,000 per each occurrence and $3,000,000 in the aggregate, (b) to the extent applicable, workers' compensation insurance with statutory benefits as required by any state or federal law and employer liability insurance with a limit of not less than $1,000,000 and shall include a waiver of subrogation, and (c) to the extent applicable as it would pertain to the Services, business auto liability insurance with a limit of not less than $1,000,000 each accident. The insurance required hereunder shall be considered primary and non-contributory insurance and all insurance carried by Producer, its agents, employees, and the parties for which it is operating, shall be considered secondary in relation thereto. Concurrently with the execution of this Agreement and at such other times as reasonably requested by Producer, Company shall deliver to Producer certificates of insurance confirming the existence of the insurance required by this Agreement and which shall endorse **Electric Forest, LLC; Madison House Presents, LLC; Insomniac Holdings, LLC; AEG Presents, LLC; Anschutz Entertainment Group, LLC; Live Nation Entertainment, Inc.; Antler Bar Amusements, LLC; Thoroughbred Investments, LLC; Double JJ Propco, LLC;** and their respective parents, affiliates, officers, directors, representatives, employees, subcontractors, and any other party reasonably designated by Producer as additional insureds. Nothing contained herein shall be construed as limiting in any way the extent to which Company may be held responsible for payment of damages or other sums to persons or property resulting from Company's or Company's Representatives' performance or failure to perform under this Agreement or resulting from any other acts or failure to act on the part of Company. Company shall promptly furnish to Producer loss information concerning all claims brought against Company in connection with the Premises and/or the Event. The foregoing shall not release Company of any of its obligations hereunder. Such loss information shall include the date of the occurrence, the identity of the claimant, the details of the claim and such additional specific facts as Producer may reasonably request.

8. **WAIVER BY COMPANY.** Company agrees that Producer shall not be responsible for any loss or damage to any property of Company resulting from fire, theft or any other cause unless due to the negligence or willful misconduct of Producer and, except to the extent expressly provided herein, Company expressly assumes all risks of loss, damage or destruction of or to any of its property resulting from any such causes.

9. **TERMINATION.** This Agreement may be terminated (a) by Producer immediately upon notice to Company if Company fails, refuses or neglects to perform each and every one of the Services to be performed by Company under or pursuant to this Agreement or upon the breach by or failure of Company to perform any of its obligations or covenants under this Agreement, (b) by Producer, with or without cause, upon five (5) days written notice to Company, or (c) by Company upon the failure of Producer to perform any of its material covenants and conditions hereunder which has not been cured within thirty (30) days following written notice from Company to Producer, or, if cure is not possible within said thirty (30) day period, if Producer has not taken meaningful steps within such time period to cure such default, or (d) the filing by or against any party of a petition for bankruptcy or for relief from creditors under any equivalent state law or regulation. Following any termination of this Agreement, Producer shall only be required to pay to Company any compensation earned by Company for any Services satisfactorily performed by Company prior to the date of such termination.

10. **INDEPENDENT CONTRACTOR STATUS.** Company is engaged hereunder as an independent contractor and as such shall be solely responsible for full compliance with all requirements under all laws and regulations now or in the future applicable to Company, its business affairs and its performance of its duties under or pursuant to this Agreement, including, without limitation, state and federal taxes applicable to this Agreement (including payroll taxes), unemployment insurance and other insurance applicable and necessary with respect to its employees and all of its duties and obligations as an employer. The relationship created by this Agreement is that of independent contractors, and nothing contained in this Agreement shall be deemed or construed as creating any partnership, joint venture, employment relationship, agency or other relationship between the parties or to make Producer liable for the debts or obligations of Company. No Representative of Company shall be deemed at any

*JEH*   *JS*
Company  Producer
Initials   Initials

time to be an employee, servant, or agent of Producer for any purpose whatsoever. Company shall require all of its Representatives to refrain from making any representation by word or conduct whereby any other person might understand or believe that such persons are Representatives of Producer.

11. **INTELLECTUAL PROPERTY.** Company agrees that (a) nothing in this Agreement is intended to convey any ownership or other rights in the trademarks, service marks, copyrights or other intellectual property rights belonging to the Event, Producer, artist(s) or their respective affiliates (sometimes collectively and individually referred to herein as, the "Trademarks"), (b) ownership of all such Trademarks shall remain the property of their owners, and (c) Company will not use any Trademarks under any circumstances without the prior written consent of Producer, which consent Producer may withhold in its sole and absolute discretion. Notwithstanding anything to the contrary contained herein, Company acknowledges that Producer and its designees may film footage and photograph activities from the Event; accordingly Company grants Producer a non-exclusive, perpetual, worldwide, license to use the Company's trademarks, and Company shall ensure that its agents, contractors, and employees license to Producer the right to their likeness, to the extent such are incorporated in an incidental manner in audio visual productions and other promotional materials created by Producer or its designees concerning the Event and in connection with the exploitation, marketing and promotion of such productions, in any manner or medium now known or hereafter devised.

12. **CONFIDENTIAL INFORMATION.** During the term of this Agreement, Company and its Representatives may gain access or be exposed to certain confidential and proprietary information relating to the Event or the business of Producer or its affiliates. Company agrees, for itself and its Representatives, that all such confidential and proprietary information shall remain and be kept in strictest confidence and shall not be disclosed to or used by any person or entity without the prior written consent of Producer, which consent may be withheld by Producer in its sole and absolute discretion. The obligation to maintain confidentiality provided herein shall survive any termination or expiration of the term of this Agreement and may be enforced by injunctive relief or other equitable or legal remedies without the necessity of proving inadequacy of legal remedies and without proving that Producer or any of its affiliates or Representatives would suffer irreparable harm as a result of a violation of such confidentiality obligation. Any public announcement regarding this Agreement or the Event shall be made only by Producer.

13. **EFFECT OF AGREEMENT/ASSIGNMENT.** This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and to their respective permitted successors and assigns; provided, however, that this Agreement may not be assigned by Company, nor may any of Company's duties hereunder be delegated, without the prior written consent of Producer. Any purported transfer in violation of this section will be void.

14. **FORCE MAJEURE EVENT.** The failure of any party to comply with its obligations hereunder shall be excused to the extent such party's performance has been rendered impossible as a result of illness or death of an artist or other artist unavailability, an act of God, strike, labor dispute, war, fire, earthquake, act of public enemies, acts of terrorism, action of federal, state or local governmental authorities or for any other reason beyond the reasonable control of the party claiming protection by reason of such force majeure event (a "Force Majeure Event"). In the event an Event or any portion thereof is cancelled by reason of a Force Majeure Event, Producer may terminate this Agreement immediately as to that Event or such portion thereof and shall have no further obligations to Company hereunder as it relates to that Event or such portion thereof.

15. **NOTICES.** Except as otherwise expressly provided in this Agreement, any and all notices or other communication required or permitted under or pursuant to this Agreement shall be in writing and shall be delivered either by personal delivery, including delivery by a recognized courier service, or by certified or registered mail, return receipt requested, postage prepaid by United States mail, addressed to the address set forth below such party's signature line. All notices shall be deemed delivered either upon actual receipt thereof if personally delivered, or, if mailed, on the third day following deposit in the United States mails as provided above. Either party may change the address at which it receives notices by notifying the other party of such change in the manner provided herein.

JFH   JS
Company   Producer
Initials   Initials

16. **WAIVER.** No course of dealing or delay by either party to this Agreement in exercising any right, power or remedy under this Agreement will operate as a waiver of any right, power or remedy of that party, and no waiver by a party of a breach of any provision of this Agreement will not be considered or constitute a waiver of any succeeding breach of the provision or a waiver of the provision itself.

17. **CHOICE OF LAW; FORUM SELECTION CLAUSE.** The validity, interpretation, construction and enforcement of this Agreement shall be governed and controlled by the laws of the State of California, without regard to that State's rules with respect to choice of law. Any dispute arising out of or related to this Agreement must be brought in federal or state court in Los Angeles County, California, and the parties hereby consent to the exclusive jurisdiction and venue of such forum.

18. **RECORDS/AUDITS.** To the extent necessary to calculate the total payments due to Company hereunder, Company shall keep records of expenses pertaining to the Services in sufficient detail to allow Producer to fully review, audit and understand the same. Producer shall have the right at any time and from time to time to audit Company's billings and records associated with the Services. Company shall maintain, preserve, and make available for inspection, audit, and reproduction, for at least twenty-four (24) months following the submission of the final invoice, the books, records, agreements, and other documents used in determining any cost incurred and billed to Producer during the performance of this Agreement. If any such audit reveals inaccuracies in the billings, the necessary adjustment shall be made promptly.

19. **ENTIRE AGREEMENT / MISC.** This Agreement expresses and contains the entire agreement and understanding between the parties hereto with respect to the subject matter hereof and supersedes and replaces any and all prior agreements and understandings, either oral or written, with respect to the subject matter hereof. Agreement shall not be construed against the drafter. This Agreement shall not inure to the benefit, or create any right or cause of action in or on behalf of, any person or entity other than the parties. If any covenant, term or provision of this Agreement is deemed to be contrary to law, that covenant, term or provision will be deemed separable from the remaining covenants, terms and provisions of this Agreement and will not affect the validity, interpretation or affect the remainder of this Agreement. This Agreement may not be modified, altered or amended except by a written instrument signed by both parties. This Agreement may be executed in counterparts, each of which shall be an original, but all of which together shall constitute one and the same agreement. Facsimile, electronically scanned, electronic and/or digital signatures shall be deemed original for all purposes. The parties agree to take such further acts and to execute such further documents that may be necessary or convenient to carry out the intents and purposes of this Agreement.

**IN WITNESS WHEREOF**, the parties have executed this Agreement and have made it effective as of the day and year first above written.

**JOHN E. HEYKOOP DBA**
**EAGLE TOWING + RECOVERY:**

By: John Heykoop
Name:
Title: Owner
Date: 02/09/18

John E. Heykoop DBA Eagle Towing + Recovery
10255 Old US Hwy 31
Montague, MI 49437
Phone:
Attention: John E. Heykoop

**ELECTRIC FOREST, LLC:**

DocuSigned by:
By: Jeremy Stein
F3A6BE94E3FE400...
Name: Jeremy Stein
Title: President
Date: 2/9/2018

Electric Forest, LLC
1401 Walnut Street, Suite 500
Boulder, CO 80302
303.554.9900
Attention: Jeremy Stein

JEH | JS
Company | Producer
Initials | Initials

## EXHIBIT A
## SERVICES

Company shall provide Producer the following Services:

Onsite towing services, as outlined below, as well as necessary equipment and personnel required to provide such services.

On Site Start Date (First Work Date): June 15, 2018
On Site End Date (Last Work Date): July 8, 2018

- Eight (8) Managers
- Twenty-five (25) Staff
- Removal of up to sixty (60) vehicles parked on the Premises during the first weekend that are unable to be removed by Event patron at no fault to the Event patron. Company to compile and submit a summary by Event patron name, vehicle description and type of service rendered.
- Removal of up to sixty (60) vehicles parked on the Premises during the second weekend that are unable to be removed by Event patron at no fault to the Event patron. Company to compile and submit a summary by Event patron name, vehicle description and type of service rendered.
- Responsive, friendly, and helpful customer service.
- Towing insurance coverage.
- Company to tow Event patron vehicles to a temporary impound lot on the Premises. Event patron vehicles will be impounded as directed by Producer's Operations Manager, Producer's Parking manager on duty, law enforcement officers and/or the fire department if such vehicles are parked in unauthorized locations or when the vehicle is an obstacle. Any extraneous tow requests to be approved by the Producer's Operations Manager. The fee to release the vehicle from the impound lot will be the sole cost of the Event patron.

Company shall provide Event patron(s), (the "Customer" or "Customers") with the following additional services for a fee. The Customer(s) is responsible for any and all fees associated with such additional services, as listed in Exhibit B. Company to fully disclose all fees associated with additional services prior to services being rendered.

**Towing**
Company to tow Customer's stranded vehicle to a desired location, and/or the nearest available car dealership or auto body shop.

**Lock Out**
Company will arrange for a third party locksmith company to assist Customer with re-entry into their vehicle.

**Tire Change**
Company to change a flat tire and replace Customer's spare tire using Company provided tools.

**Jump Start**
Company to charge Customer's battery using Company provided jumper cables.

*\* Company hereby acknowledges that total Compensation set forth on Exhibit B below is inclusive of all gear and transportation required to provide services outlined herein.*

Producer may, at any time, by written notice to Company, make changes to the Services within the general scope of this Agreement by revising the description of Services set forth herein. Should any such change increase or decrease the Compensation due to Company, proper adjustments shall be made to the Compensation. Within ten (10) calendar days of the completion of Services, Company shall provide to Producer a final invoice detailing the total Services provided to Producer as well as the **total amount** of Compensation due to Company, less any payments applied (hereinafter referred to as the, "Final Invoice").

Company Initials / Producer Initials JS

## EXHIBIT B
## COMPENSATION

In accordance with Section 3 of the Agreement, Company shall receive Compensation as follows:

Compensation is contingent upon total Services provided to Producer. As of the date of this Agreement the total Compensation due to Company is **Three Thousand Dollars and Zero Cents ($3,000.00)** (amount is inclusive of any and all taxes, fees and dues affiliated with Services).

Company to retain any and all monies collected for additional services provided to Customers, according to the rates listed below. Company to fully disclose fees associated with additional services prior to services being rendered, except for impounding services.

| | |
|---|---|
| Impounding | $135.00 |
| Towing | variable and at a fair market price |
| Lock-Out | $50.00 |
| Tire Change | $50.00 |
| Jump Starts | $50.00 |

Compensation shall not exceed what is outlined herein without prior written consent from Producer. Any additional needs by Company that will be provided by Producer are outlined on Exhibit C, if applicable. Exhibit C is for informational purposes only, and is subject to change by Producer without notice. Final needs will be determined based on need and the event budget, and all approved requests will be communicated prior to the Event.

Payment Terms:

- Fifty Percent (50%) of the Total Compensation is payable upon the full execution of this Agreement and upon receipt by Producer of all paperwork required by Producer, including the mutually reviewed and agreed upon request form for on-site requirements; and

- Any remaining Compensation due to Company shall be payable as set forth in Section 3 of this Agreement upon successful completion of the Services, (including but not limited to, the removal of any and all materials prepared or delivered to the Premises on behalf of Company), pending full execution of this Agreement and receipt by Producer of all requested documents outlined herein, if any, including but not limited to certificates of insurance and a verifiable and accepted Final Invoice as referenced in Exhibit A.

Company Initials / Producer Initials (JS)

## EXHIBIT C
## PRODUCER PROVIDES

**\*\*All dates must be pre-approved by Producer in writing\*\***
**\*\*\*Final approved requests will be communicated prior to the Event\*\*\***

Producer shall provide Company the following based on actual onsite dates:

- Working credentials for thirty three (33) Staff.
- Camping passes for twenty five (25) Staff.
- Thirteen (13) radios.
- Four (4) golf carts.
- Final approved requests including but not limited to a designated work area, fencing, portolets, lighting, etc. will be mutually agreed upon by Company and Producer, per advance.

**\*\*All dates must be pre-approved by Producer in writing\*\***
**\*\*\* Final approved requests will be communicated prior to the Event \*\*\***

Company Initials: *JW*
Producer Initials: *JS*