UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN HEYKOOP doing business as
EAGLE TOWING,

    Plaintiff,

v

MICHIGAN STATE POLICE, DAVID
ROESLER, JEFFREY WHITE, and
CHRIS McINTIRE,

    Defendants.

NO. 1:18-cv-00632

HON. ROBERT J. JONKER

MAG. PHILLIP J. GREEN

---

Christopher S. Patterson (P74350)
John S. Brennan (P55431)
Fahey Schultz Burzych Rhodes PLC
Attorneys for Plaintiff
4151 Okemos Road
Okemos, MI  48864
(517) 381-0100

Patrick S. Myers (P81444)
Assistant Attorney General
Attorney for Defendants
Civil Litigation, Employment &
Elections Division
P.O. Box 30736
Lansing, MI  48909
(517) 373-6434

                                 /

**BRIEF IN SUPPORT OF DEFENDANTS'
<u>MOTION TO DISMISS</u>**

# CONCISE STATEMENT OF ISSUES PRESENTED

1. Should this Court grant Eleventh Amendment immunity to Defendant Michigan State Police as to all of Plaintiff's claims?

2. Should this Court grant qualified immunity to Defendants Roesler, White, and McIntire as to Plaintiff's constitutional claims?

3. Should this Court grant governmental immunity to Defendant White as to Plaintiff's state law claim?

# CONTROLLING OR MOST APPROPRIATE AUTHORITY

<u>*Authority*</u>:   U.S. Const. amend. XI

*Lucas v. Monroe Cnty.*, 203 F.3d 964 (6th Cir. 2000)

*Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999)

*Odom v. Wayne Cnty.*, 760 N.W.2d 217, 228 (Mich. 2008)

*Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 706 N.W.2d 843 (Mich. Ct. App. 2005)

# STATEMENT OF FACTS

Plaintiff is the operator of Eagle Towing, a towing company. (Compl., R. 1, ¶ 4, Page ID # 2). Defendants David Roesler, Jeffrey White, and Chris McIntire are officers of Defendant Michigan State Police ("MSP"). Defendant White is the first lieutenant of MSP's Hart Post and Defendant McIntire is the first lieutenant of MSP's Rockford Post; Defendant Roesler is the captain and commander of MSP District 6-West, which encompasses both the Hart and Rockford Posts. (Compl., R. 1, ¶¶ 6-8, Page ID ## 2-3). This dispute arises from Eagle Towing's removal from the Hart and Rockford Posts' No-Preference Wrecker Call Lists ("No-Preference Lists"). (Compl., R. 1, ¶ 11, Page ID # 3). A No-Preference List is a list of towing companies used by MSP when a motorist in need of such services expresses no preference for a particular company. (Compl., R. 1, ¶ 9, Page ID # 3).

MSP Official Order 48 establishes the policy and procedures for MSP's use of wrecker services. (Compl., R. 4, Page ID ## 88-109). Official Order 48 provides MSP commanders the option of establishing a No-Preference List or contracting with local towing companies. (Compl., R. 4, Page ID # 97). The order delineates certain requirements a towing company must meet to be placed on a No-Preference List. (Compl., R. 4, Page ID ## 99-104). The order also states:

> Wrecker services interested in working with the Michigan State Police shall agree to abide by the following requirements for the duration of their association with the department. Failure to comply with all of these requirements may be cause for termination of the contract or removal from the no-preference wrecker call list as provided in this Order.

(Compl., R. 4, Page ID # 99).

1

On November 13, 2017, Defendant White sent Plaintiff a letter informing him that Eagle Towing would be removed from the Hart Post's No-Preference List. (Compl., R. 1, ¶ 16, Page ID # 4). Defendant White based this decision on "the quality and type of service that Eagle Towing has provided within the Hart Post are[a]." (Compl., R. 1-6, Page ID # 22). Plaintiff alleges that he was not afforded an opportunity to protest Eagle Towing's removal. (Compl., R. 1, ¶ 16, Page ID # 4). Plaintiff also claims that Defendant McIntire subsequently removed him from the Rockford Post's No-Preference List. (Compl., R. 1, ¶ 17, Page ID # 4).

Plaintiff asserts that Defendant White's stated justification is pretextual; instead, he alleges, the removal of Eagle Towing from the No-Preference Lists was retaliation. (Compl., R. 1, ¶ 19, Page ID # 5). According to Plaintiff, in June 2015, he provided information to the Oceana Prosecuting Attorney in relation to an investigation of Robert Wilson, the former Chief of Police for the Village of Shelby in Oceana County, for mishandling salvage title inspection fees. (Compl., R. 1, ¶¶ 12-13, Page ID ## 3-4). Plaintiff alleges that Wilson, "a close friend" of Oceana Sheriff Craig Mast, was later convicted and sentenced. *Id.* Plaintiff claims that on November 9, 2017, Mast removed Eagle Towing from Oceana County's No-Preference List based on a complaint about Eagle Towing, and that Mast emailed Defendant White "advising him to do the same." (Compl., R. 1, ¶ 15, Page ID # 4).

Plaintiff alleges that "the true reason for [Eagle Towing's] removal is retaliation for Plaintiff's having reported law enforcement, and Sheriff Mast's personal friend, in particular, for improper handling of salvage title inspection fees."

2

(Compl., R. 1, ¶ 19, Page ID # 5). After Eagle Towing was removed from the Hart and Rockford Posts' No-Preference Lists, Plaintiff states that he applied for placement on the No-Preference Lists, but that his application has not yet been granted. (Compl., R. 1, ¶¶ 20-21, Page ID ## 5-6). Plaintiff further alleges that "[u]pon information and belief, other towing companies within the Rockford and Hart Posts enjoy placement on the No-Pref[erence] List, and receive service calls as a result of such placement, yet they do not meet the requirements of Official Order No. 48." (Compl., R. 1, ¶ 22, Page ID # 6). Finally, Plaintiff claims that "[u]pon information and belief, Defendant White stated during a 911 Dispatch Committee Meeting that he will refuse to permit Plaintiff to render wrecker services pursuant to its contract" with Electric Forest, LLC to provide such services during the Electric Forest musical festival which was held from June 28, 2018 to July 1, 2018. (Compl., R. 1, ¶¶ 24-25, Page ID # 6).

Plaintiff brings this suit under 42 U.S.C. §1983, alleging that the removal of Eagle Towing from the Hart and Rockford Posts' No-Preference Lists violated his constitutional rights. Plaintiff claims that Defendants conspired to deprive him of his right to equal protection, procedural due process, and to petition the government. Plaintiff also alleges that Defendants MSP and White tortiously interfered with Eagle Towing's business expectancy and relationship with Electric Forest, LLC. Plaintiff seeks compensatory damages and injunctive relief enjoining Defendants from interfering with Plaintiff's contract with Electric Forest, LLC and placing Eagle Towing back on the No-Preference Lists.

3

## LEGAL STANDARD

A party may move to dismiss a case for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Federal Rules of Civil Procedure require a plaintiff's complaint to include "a short and plain statement of the claim[s] showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff must plead enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This pleading standard calls for "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action. . . ." *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). However, courts are not required to accept mere conclusory statements as true. *Iqbal*, 556 U.S. at 678.

# ARGUMENT

## I. Defendant MSP is entitled to Eleventh Amendment immunity.

The Eleventh Amendment to the U.S. Constitution provides: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "[A]n unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Employees of Dep't of Pub. Health & Welfare, Missouri v. Dep't of Pub. Health & Welfare, Missouri*, 411 U.S. 279, 280 (1973) (citations omitted). This sovereign immunity applies not only to states but also to "those government entities that act as 'arm[s] of the State.'" *S.J. v. Hamilton Cnty.*, 374 F.3d 416, 419 (6th Cir. 2004) citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280 (1977).

Here, Plaintiff has brought claims against MSP in federal court. MSP "is a principal agency of the State of Michigan and is indisputably considered an 'arm of the state' for Eleventh Amendment purposes." *Alford v. City of Detroit*, 657 F. Supp. 2d 847, 851 (E.D. Mich. 2009) (citations omitted); *see also* Mich. Comp. Laws § 16.250; Mich. Comp. Laws § 28.2. "Section 1983 . . . does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits . . . ." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989) (citation omitted). Plaintiff's claims against MSP are therefore barred under the Eleventh Amendment, and should be dismissed.

5

**II.   Defendants Roesler, White, and McIntire are entitled to immunity for Plaintiff's claims, and alternatively, Plaintiff fails to state a claim upon which relief can be granted.**

  **A.   Plaintiff's Constitutional Law Claims**

Plaintiff brings this suit under 42 U.S.C. §1983, alleging that Defendants[1] conspired to deprive him of his right to equal protection, procedural due process, and to petition the government. For Section 1983 claims, "qualified immunity prevents government officials from being held liable if (1) the officers did not violate any constitutional guarantees or (2) the guarantee, even if violated, was not 'clearly established' at the time of the alleged misconduct." *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 992 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 738 (2018) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). For a constitutional right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "The Supreme Court recently reminded [courts] that a plaintiff must identify a case with a similar fact pattern that would have given 'fair and clear warning to officers' about what the law

---

[1] Plaintiff has not alleged any facts establishing that Defendant Roesler was personally involved in any of the alleged constitutional violations. For Section 1983 claims, plaintiffs must allege active participation in, or at the very least implicit authorization or knowing acquiescence to, a constitutional violation. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "Supervisory liability under § 1983 does not attach when it is premised on a mere failure to act; it 'must be based on active unconstitutional behavior.'" *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002) (quoting *Bass v. Robinson,* 167 F.3d 1041, 1048 (6th Cir.1999)). Since Plaintiff has failed to allege that Defendant Roesler had any personal involvement, his claims against Defendant Roesler should also be dismissed on those grounds.

requires." *Arrington-Bey*, 858 F.3d at 993 (citing *White v. Pauly*, 137 S.Ct. 548, 552 (2017)).

### 1.     Equal Protection

Plaintiff claims that the removal of Eagle Towing from the No-Preference Lists violated the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause states that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This Clause "embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly." *Vacco v. Quill*, 521 U.S. 793, 799 (1997) (citation omitted). "Equal protection claims can be brought by a 'class of one,' where the plaintiff alleges that the state treated the plaintiff differently from others similarly situated and that there is no rational basis for such difference in treatment." *Warren v. City of Athens*, 411 F.3d 697, 710 (6th Cir. 2005) (citing *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000)). "The 'rational basis' test means that courts will not overturn government action 'unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that the [government's] actions were irrational.'" *Id.* (quoting *Kimel v. Fla. Bd. of Regents,* 528 U.S. 62, 84 (2000)).

"A 'class of one' plaintiff may demonstrate that a government action lacks a rational basis . . . either by 'negativ[ing] every conceivable basis which might support' the government action or by demonstrating that the challenged government action was motivated by animus or ill-will." *Warren*, 411 F.3d at 711

7

citing *Klimik v. Kent Cty. Sheriff's Dept.,* 91 Fed. Appx. 396, 400 (6th Cir. 2004); *Bower v. Vill. of Mount Sterling,* 44 Fed. Appx. 670, 677–78 (6th Cir. 2002). In this case, Defendant White based his decision to remove Eagle Towing from the No-Preference List on "the quality and type of service that Eagle Towing has provided within the Hart Post are[a]." (Compl., R. 1-6, Page ID # 22). MSP and its commanders have a legitimate interest in ensuring that towing companies used by MSP conform to certain standards of quality. The requirements for towing companies outlined in MSP Official Order 48 reflect this commitment. Plaintiff concedes that at least one vehicle owner lodged a complaint about Eagle Towing. (Compl., R. 1, ¶ 15, Page ID # 4). He also does not allege that MSP received complaints about any other towing company who, by contrast, remained on the No-Preference Lists. Plaintiff has not provided factual allegations that negate Defendant White and McIntire's rational basis to remove Eagle Towing from the No-Preference Lists.

Furthermore, Plaintiff has not sufficiently alleged any animus or ill-will by any of Defendants. Plaintiff claims that "the true reason for the removal is retaliation for Plaintiff's having reported law enforcement, and Sheriff Mast's personal friend, in particular, for improper handling of salvage title inspection fees." (Compl., R. 1, ¶ 19, Page ID # 5). Plaintiff has not alleged that Defendants knew of his involvement with the investigation of Wilson. His allegations, if true, may establish an inference of animus or ill-will by Sheriff Mast, who was apparently unhappy with Plaintiff's role in the investigation of Wilson. However, Sheriff Mast

8

is not a Defendant in this lawsuit.  Plaintiff only alleges that Mast "sent an email to Defendant White advising him to" remove Eagle Towing from the Hart Post's No-Preference List.  (Compl., R. 1, ¶ 15, Page ID # 4).  Defendants White and McIntire had rational justifications for removing Eagle Towing from the Hart and Rockford Posts' No-Preference Lists—namely, Eagle Towing's quality of service.  Any animus towards Plaintiff on the part of Sheriff Mast cannot be imputed to Defendants without any connection alleged.  Since he cannot establish the violation of his constitutional guarantee to equal protection, Defendants are entitled to qualified immunity and Plaintiff's equal protection claim should be dismissed.

### 2.     First Amendment Retaliation

Plaintiff alleged First Amendment retaliation under 42 U.S.C. § 1983.  A plaintiff bringing such a claim must show "that (1) the plaintiff was participating in a constitutionally protected activity; (2) the defendant's action injured the plaintiff in a way likely to deter a person of ordinary firmness from further participation in that activity; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct."  *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 371 (6th Cir. 2011) (citations omitted).  "Although the elements of a First Amendment retaliation claim remain constant, the underlying concepts that they signify will vary with the setting—whether activity is 'protected' or an action is 'adverse' will depend on context."  *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999) (en banc).  "[P]lacement on a municipal tow rotation list is one such benefit that may not be denied a person because of his constitutionally protected speech."  *Lucas v. Monroe Cty.*, 203 F.3d 964, 972 (6th Cir. 2000) citing *O'Hare*

9

*Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712, 717 (1996). However, Plaintiff cannot show that he was participating in constitutionally protected activity.

Plaintiff attempts to characterize his cooperation with law enforcement officials as engaging in the right to access to courts, arising from the constitutional right to "petition the Government for a redress of grievances." *See* U.S. Const. amend. I. In First Amendment retaliation jurisprudence, right to access claims typically arise when prisoners are retaliated against for exercising their right of access to the courts. *See e.g.*, *Thaddeus-X*, 175 F.3d at 391. This case does not implicate the right of access to the courts. Plaintiff was not petitioning the government for a redress of grievances—he was cooperating with law enforcement officials in the investigation of Wilson. Plaintiff does not allege that he filed a complaint against Wilson or another law enforcement officer for mishandling salvage title inspection fees. Plaintiff's cooperation with law enforcement was not protected activity covered by the First Amendment.

Plaintiff also fails to show a causal connection, i.e., that "the adverse action was motivated at least in part by the [alleged] protected conduct." *Thaddeus-X*, 175 F.3d at 394. Plaintiff must show that without his protected conduct, the adverse action would not have been taken. *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010). Plaintiff contends that Defendants retaliated against him "for Plaintiff's having reported law enforcement, and Sheriff Mast's personal friend, in particular, for improper handling of salvage title inspection fees." (Compl., R. 1, ¶ 19, Page ID # 5). However, as discussed above, Defendants based their decision

10

on Plaintiff's "quality and type of service," and Plaintiff admits that at least one vehicle owner lodged a complaint about Eagle Towing. These allegations provide justification for Eagle Towing's removal from the No-Preference Lists independent from Plaintiff's alleged protected conduct.

Moreover, Plaintiff's cooperation with law enforcement officials (the protected activity alleged) occurred in June 2015—more than two years prior to Eagle Towing's removal from the No-Preference Lists (the adverse action alleged). This passage of time renders any causal connection between the protected activity and the adverse action too attenuated to meet the standard for First Amendment retaliation. *See, e.g.*, *Vereecke*, 609 F.3d at 400 ("[T]he more time that elapses between the protected activity and the adverse . . . action, the more the plaintiff must supplement his claim with 'other evidence of retaliatory conduct to establish causality.'") quoting *Mickey v. Zeidler Tool & Die Co.,* 516 F.3d 516, 524–25 (6th Cir. 2008). Plaintiff thus has not alleged facts which support his First Amendment retaliation claim. Since he cannot establish the violation of his constitutional guarantee to petition the government, Defendants are entitled to qualified immunity and Plaintiff's First Amendment retaliation claim should be dismissed.

### 3. Due Process

"In order to establish a procedural due process claim in a § 1983 action, 'plaintiffs must establish three elements: (1) that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment ..., (2) that they were deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford them

11

adequate procedural rights prior to depriving them of their protected interest.'" *Med Corp. v. City of Lima,* 296 F.3d 404, 409 (6th Cir. 2002) quoting *Hahn v. Star Bank,* 190 F.3d 708, 716 (6th Cir. 1999), *cert. denied,* 529 U.S. 1020 (2000).

Here, Plaintiff cannot meet the first step in the due process analysis. "The mere unilateral expectation of continuing to receive a benefit is not enough to create a protected property interest; instead a 'legitimate claim of entitlement' must exist." *Lucas*, 203 F.3d at 978 quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). In *Lucas*, a sheriff's department removed a towing company from its towing company rotation stand-by call list after the owner of the towing company publicly critiqued the sheriff. 203 F.3d at 971. Although the plaintiffs sufficiently alleged a First Amendment retaliation claim, the Sixth Circuit affirmed the district court's dismissal of the plaintiffs' procedural due process claim, holding that the plaintiffs lacked any protected property interest in remaining on the towing stand-by list. *Id.* at 978. In *Wright v. Genesee County Corporation*, the Eastern District of Michigan followed *Lucas* in holding that a towing company did not have a protected property interest in its placement on Genesee County's No-Preference List. *Wright v. Genesee Cty. Corp.*, 659 F. Supp. 2d 842, 849 (E.D. Mich. 2009). Similarly, Plaintiff lacks a property interest in remaining on the Hart and Rockford Posts' No-Preference Lists. Since he cannot establish the violation of his constitutional guarantee to procedural due process, Defendants are entitled to qualified immunity and Plaintiff's due process claim should be dismissed.

12

### 4.  Conspiracy

In order to establish a Section 1983 conspiracy, Plaintiff must show "that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011) quoting *Spadafore v. Gardner,* 330 F.3d 849, 854 (6th Cir. 2003). "Although circumstantial evidence may prove a conspiracy, '[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983.'" *Id.* quoting *Spadafore,* 330 F.3d at 854.

Here, Plaintiff does not allege sufficient facts to support his Section 1983 conspiracy claim.  He merely offers the conclusory statements that Defendants "conspired to deprive Plaintiff of federally protected rights" and that "[t]he object of the conspiracy was to silence, harm, punish, intimidate, and scare Plaintiff, among other objects." (Compl., R. 1, ¶¶ 60, 62, Page ID # 14).  Plaintiff fails to demonstrate that Defendants acted in concert to remove him from the Hart and Rockford Posts' No-Preference Lists or that they shared in the objective of such a plan.  Therefore, Plaintiff has failed to state a claim for Section 1983 conspiracy.

### B.  Plaintiff's State Law Claim

Plaintiff also brings a claim for tortious interference with a business expectancy and relationship against Defendants MSP and White.  He alleges that that "Defendant White stated during a 911 Dispatch Committee Meeting that he

13

will refuse to permit Plaintiff to render wrecker services pursuant to its contract" with Electric Forest, LLC to provide such services during the Electric Forest musical festival. (Compl., R. 1, ¶¶ 24-25, Page ID # 6). "The elements of tortious interference with a business relationship or expectancy are (1) the existence of a valid business relationship or expectancy that is not necessarily predicated on an enforceable contract, (2) knowledge of the relationship or expectancy on the part of the defendant interferer, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship or expectancy was disrupted." *Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 706 N.W.2d 843, 849 (Mich. Ct. App. 2005) (citations omitted).

      Plaintiff's allegations, even taken as true, fail to state a claim for tortious interference with a business relationship or expectancy. Even assuming Plaintiff met the first two elements of a tortious interference claim, he fails to plead sufficient facts that establish that any Defendant intentionally interfered with Plaintiff's contract with Electric Forest LLC, or that any damage resulted to Plaintiff. Defendant White's statement, if true, does not constitute interference which induced a termination of Plaintiff's contract with Electric Forest, LLC. Plaintiff did not allege that this statement actually interfered with his contract, or that it actually resulted in any damage to him. Therefore, Plaintiff has failed to state a claim for tortious interference with a business relationship or expectancy.

14

Even if Plaintiff properly alleged a claim for tortious interference with a business relationship or expectancy, Defendant White would be entitled to governmental immunity under Michigan law. The Governmental Tort Liability Act (GTLA), Mich. Comp. Laws § 691.1401 *et seq.*, grants immunity from tort liability to individual governmental employees when the employee is engaged in the exercise or discharge of a governmental function. *Duffy v. Michigan Dep't of Nat. Res.*, 805 N.W.2d 399, 402 (Mich. 2011); *Grimes v. Dep't of Transp.*, 715 N.W.2d 275, 278 (Mich. 2006). The GTLA preserves the common-law test for immunity from intentional torts. Mich. Comp. Laws § 691.1407(3); *see also Ross v. Consumers Power Co.*, 363 N.W.2d 641, 667 (Mich. 1984). To qualify for governmental immunity for an intentional tort, a law enforcement officer "must establish that she was acting in the course of her employment and at least reasonably believed that she was acting within the scope of her authority, that her actions were discretionary in nature, and that she acted in good faith." *Odom v. Wayne Cnty.*, 760 N.W.2d 217, 228–29 (Mich. 2008). The good-faith element "protects a defendant's honest belief and good-faith conduct with the cloak of immunity while exposing to liability a defendant who acts with malicious intent." *Id.* at 229. Lack of good faith can be demonstrated by evidence of malice or willful and wanton misconduct, which is defined as "an intent to harm or, if not that, such indifference to whether harm will result as to be the equivalent of a willingness that it does." *Id.* at 225 (citations omitted).

Applying that framework, Defendant White is entitled to governmental immunity. His comments relating to MSP's use of towing companies during the Electric Forest music festival arose within his employment with MSP and his discretionary police activity. Plaintiff has not alleged any facts that would give rise to an inference of "malicious intent, capricious action or corrupt conduct." *Odom,* 760 N.W.2d at 225 (quotations and citation omitted). Accordingly, Defendant White is entitled to governmental immunity.

Furthermore, this claim is moot. "A federal court has no authority to render a decision upon moot questions or to declare rules of law that cannot affect the matter at issue." *Cleveland Branch, N.A.A.C.P. v. City of Parma*, 263 F.3d 513, 530 (6th Cir. 2001) citing *Church of Scientology v. United States,* 506 U.S. 9, 12 (1992). "Mootness generally depends on 'whether the relief sought would, if granted, make a difference to the legal interests of the parties.'" *United States v. City of Detroit*, 401 F.3d 448, 450–51 (6th Cir. 2005) quoting *McPherson v. Michigan High School Athletic Ass'n, Inc.,* 119 F.3d 453, 458 (6th Cir.1997) (en banc). For his tortious interference claim, Plaintiff only seeks "an injunction against Defendants MSP, White and White's supervisor, Defendant Roesler, restraining them from interfering with Plaintiff's contractual relationship with Electric Forest LLC, and honoring Plaintiff's exclusive right to provide towing services on the private property described in Plaintiff's contract." The Electric Forest musical festival began on June 21, 2018 and concluded on July 1, 2018. Therefore, Plaintiff's requested injunctive relief regarding his state law claim is no longer necessary and his claim

16

for tortious interference with a business relationship or expectancy should be dismissed.

## CONCLUSION AND RELIEF SOUGHT

For the reasons discussed above, Defendants request this Court grant their motion, and that Plaintiff's Complaint be dismissed.

Respectfully submitted,

Bill Schuette
Attorney General

*s/Patrick S. Myers*
Patrick S. Myers (P81444)
Assistant Attorney General
Attorney for Defendants
Civil Litigation, Employment &
Elections Division
P.O. Box 30736
Lansing, MI  48909
517.373.6434
myersp4@michigan.gov

Dated:  July 11, 2018

## CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing of the foregoing document as well as via US Mail to all non-ECF participants.

*s/Patrick S. Myers*
Patrick S. Myers
Assistant Attorney General
Attorney for Defendants