# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

---

JOHN HEYKOOP D/B/A EAGLE TOWING,

     Plaintiff,

v

MICHIGAN STATE POLICE, and CAPT. DAVID ROESLER, COMMANDER, DISTRICT 6, MICHIGAN STATE POLICE; FIRST LIEUTENANT JEFFREY WHITE; FIRST LIEUTENANT CHRIS MCINTIRE.

    Defendants.

Case No.: 1:18-cv-00632

Hon. Robert J. Jonker

Mag. Phillip J. Green

_____/

| | |
|---|---|
| John S. Brennan (P55431)<br>Christopher S. Patterson (74350)<br>FAHEY SCHULTZ BURZYCH RHODES PLC<br>Attorneys for Plaintiff<br>4151 Okemos Road<br>Okemos, Michigan 48864<br>Tel: (517) 381-0100<br>Fax: (517) 381-5051<br>jbrennan@fsbrlaw.com<br>cpatterson@fsbrlaw.com | Patrick S. Meyers (P81444)<br>Assistant Attorney General<br>Attorney for Defendants<br>Civil Litigation, Employment &<br>Elections Division<br>P.O. Box 30736<br>Lansing, MI  48909<br>Tel: (517) 373-6434<br>myers4@michigan.gov |

_____/

# PLAINTIFF'S BRIEF OPPOSING DEFENDANTS' MOTION TO DISMISS

### * * * ORAL ARGUMENT REQUESTED * * *

# <u>TABLE OF CONTENTS</u>

COUNTER-STATEMENT OF ISSUE PRESENTED.................................................................... ii

CONCISE STATEMENT OF REASONS FOR PLAINTIFFS' POSITION................................. ii

CONTROLLING OR MOST APPROPRIATE AUTHORITY .................................................... iii

INTRODUCTION AND FACTUAL BACKGROUND ............................................................. 1

STANDARD OF REVIEW .................................................................................................... 4

ARGUMENT ........................................................................................................................ 5

    I.   DEFENDANTS' RETALIATION AGAINST HEYKOOP FOR REPORTING ILLEGAL CONDUCT TO LAW ENFORCEMENT AUTHORITIES VIOLATED "CLEARLY ESTABLISHED" CONSTITUTIONAL GUARANTEES, SO DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY. ..................... 5

    A.  First Amendment Retaliation. .......................................................................... 7

    B.  Equal Protection. ............................................................................................ 12

    C.  Due Process. ................................................................................................... 17

    D.  Conspiracy. .................................................................................................... 22

CONCLUSION AND REQUEST FOR RELIEF ................................................................... 24

## COUNTER-STATEMENT OF ISSUE PRESENTED

Defendants suggest three issues, the first and third of which are moot. The remaining issue is:

1.    Are Defendants White, McIntire and Roesler entitled to qualified immunity from Plaintiff's 42 U.S.C § 1983 claims?

Plaintiff Heykoop answers:      No.

Defendants answer:              Yes.

## CONCISE STATEMENT OF REASONS FOR PLAINTIFFS' POSITION

Plaintiff Heykoop owns a towing business. Like other towing companies, Heykoop gets a large percentage of revenue by being on lists of towing companies that police departments use for removing vehicles from accident scenes, etc. Heykoop reported illegal conduct to law enforcement authorities, leading to the conviction of a corrupt police chief, and an Attorney General investigation that led to the further charging and conviction of Michigan State Police ("MSP") officers for the same type of illegal conduct.

Defendants are MSP officers who retaliated against Heykoop by summarily removing his company from the towing lists used at MSP Posts, causing him to lose a considerable amount of business and revenue. Defendants' actions (among other things) violated MSP Official Order 48, which sets forth detailed requirements regarding towing companies, including the right to equal treatment, and the rights to

notice and an opportunity to respond to any alleged complaints before being removed from any towing list.

Defendants' actions violated Heykoop's First Amendment (right to petition) and Fourteenth Amendment (equal protection and due process) rights, under "clearly established" law, and constituted an unlawful conspiracy. Any competent official in Defendants' positions would have known that they violated Heykoop's rights. Therefore, Defendants are not entitled to qualified immunity.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

1.    U.S. Const. amend. I.

2.    U.S. Const. amend. XIV.

3.     42 U.S.C § 1983.

4.    *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555; 127 S. Ct. 1955; 167 L. Ed. 2d 929 (2007).

5.    *Gable v Lewis*, 201 F.3d 769, 772 (6th Cir. 2000).

6.    *Lucas v Monroe Cty.*, 203 F.3d 964, 972 (6th Cir. 2000).

7.    *O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712, 717; 116 S. Ct. 2353; 135 L. Ed. 2d 874 (1996).

8.    *Warren v City of Athens, Ohio*, 411 F.3d 697, 710 (6th Cir. 2005).

9.    *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577; 92 S. Ct. 2701; 33 L. Ed. 2d 548 (1972).

10.    *Perry v. Snidermann*, 408 U.S. 593, 601; 92 S. ct. 2694; 33 L. Ed. 2d 570 (1972).

11.    *Gregg v. Larson*, 732 F. Supp. 849 (E.D. Tenn. 1989).

12.    *Pritchett v. Alford*, 973 F.2d 307 (4th Cir. 1992).

13.    *Abercrombie v. City of Catoosa*, 896 F.2d 1228 (10th Cir. 1990).

14.    *Stillwagon v. City of Delaware*, 175 F. Supp. 3d 874, 902 (S.D. Ohio, 2016).

## INTRODUCTION AND FACTUAL BACKGROUND [1]

Plaintiff John Heykoop ("Heykoop") [2] does business as Eagle Towing, which has been towing, storing, and recovering vehicles for 73 years. Like other towing companies, much of Heykoop's business comes from being on lists that police departments use for contacting towing companies to remove vehicles from accidents, etc.  He was on the No-Preference Wrecker Rotation List ("No-Pref List") for the Michigan State Police ("MSP") posts in Hart and Rockford, Michigan. Those posts were, and are, governed by the MSP's Official Order 48, which sets forth the Statewide Wrecker Policy and Procedures (Complaint, Exhibit A, §48.3).

Heykoop discovered that Robert Wilson (then the Police Chief of the Village of Shelby in Oceana County) was mishandling fees collected for salvage title inspections. Heykoop reported Wilson's illegal conduct to law enforcement authorities, leading to Wilson's conviction. The State Attorney General also commenced an investigation, leading to several MSP officers being charged or convicted of the same misconduct.

---

[1] The following facts are condensed from Plaintiff's Complaint as relevant for Defendants' Rule 12(b)(6) motion, and must be accepted as true for purposes of that motion, as indicated in the Standard of Review section below.

[2] Parties are referenced by only their last names for clarity and convenience. No disrespect is intended.

Wilson was a close friend of Oceana Sheriff, Craig Mast, who sent an email to defendant Jeffrey White (the commander of the Hart MSP Post) telling White to remove Heykoop from the Hart Post's No-Pref List. White did so pursuant to a letter asserting only that the removal was due to "the quality and type of service" provided by Heykoop (Complaint, Exhibit B). White's letter made no reference to Official Order 48, and did not give Heykoop any opportunity to respond to any concerns (despite explicit complaint procedures including notice of specific allegations and an opportunity to be heard under §48.3.12).

Defendant Chris McIntire (the commander of the Rockford MSP Post) similarly removed Heykoop from the Rockford Post's No-Pref List, but did not even offer a pretextual reason for doing so. The third individual defendant, David Roesler, is the commander of District 6 - West, which includes the Hart and Rockford MSP Posts.

Defendants stonewalled Heykoop's attempts to get back on the No-Pref Lists (Complaint, Exhibits C, D and E), and threatened to interfere with Heykoop's additional private contract to provide towing services at a music festival (Complaint, Exhibit F).

On June 5, 2018, Heykoop started this action by filing his Complaint alleging violations of 42 U.S.C § 1983 (Counts I-IV)[3] and a State law claim for tortious interference with a business expectancy and relationship (Count V). On July 11, 2018, in lieu of filing an answer, Defendants filed their pending Motion to Dismiss.

Heykoop opposes the Motion, except for two matters. First, Heykoop acknowledges that his constitutional claims against the MSP under 42 U.S.C § 1983 do not overcome the MSP's Eleventh Amendment immunity. Second, Heykoop acknowledges that his Count V (which essentially sought an injunction against defendants MSP and White interfering with Heykoop's music festival contract) is moot because the music festival is over. Thus, the MSP may properly be dismissed as a party, and Count V may be dismissed in its entirety.[4]

The remainder of Heykoop's Complaint (Counts I-IV, alleging 42 U.S.C § 1983 claims against White, McIntire, and Roesler (for simplicity going forward, the

---

[3] 42 U.S.C § 1983 relevantly states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

[4] Heykoop reserves all other rights, including those relating to the amendment of his Complaint. Heykoop also notes that he does not entirely agree with Defendants' analysis, but declines to discuss matters that do not affect the ultimate result of the pending Motion.

"Defendants") for retaliating against him for reporting illegal conduct to law enforcement officials) pleads viable claims under clearly established law. Any competent official in Defendants' positions would have known that they violated Heykoop's rights. Therefore, Defendants' Motion to Dismiss should be denied except as indicated above. Additional detail is discussed below where it is best understood in context.

## STANDARD OF REVIEW

Defendants move for dismissal under Fed. R. Civ. P. 12(b)(6) (failure to state a claim on which relief can be granted), but often suggest that they should prevail because Plaintiff allegedly has not satisfied some evidentiary standard. Such suggestions are premature at best, and perhaps can be revisited in the context of a Rule 56 motion for summary disposition following discovery. Defendants have not even filed an answer, so the Court's review is limited to the Complaint.

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555; 127 S. Ct. 1955; 167 L. Ed. 2d 929 (2007). Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face." *Twombly, supra*, 550 U.S. at 570.

Plausibility means more than a sheer possibility, but it is not a probability requirement. It just means enough facts "to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Id*, 550 U.S. at 556; *Ashcroft v. Iqbal*, 556 U.S. 662, 678; 129 S. Ct. 1937; 173 L. Ed. 2d 868 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

## ARGUMENT

**I.   DEFENDANTS' RETALIATION AGAINST HEYKOOP FOR REPORTING ILLEGAL CONDUCT TO LAW ENFORCEMENT AUTHORITIES VIOLATED "CLEARLY ESTABLISHED" CONSTITUTIONAL GUARANTEES, SO DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY. [5]**

Defendants correctly observe that there is a two-part test for qualified immunity (brief, p 6). "In § 1983 constitutional torts like this one, qualified immunity prevents government officials from being held liable if (1) the officers did not violate any constitutional guarantees or (2) the guarantee, even if violated, was not 'clearly established' at the time of the alleged misconduct." *Arrington Bay v. City of Bedford Heights, Ohio,* 858 F.3d 988, 992 (2017).

---

[5] Defendants alternatively suggest that Heykoop failed to state a claim on which relief can be granted (brief, p 6, argument heading). Defendants do not discuss this alternative, which fails for lack of merit in any event, for the reasons discussed below (*i.e*., since Defendants lack qualified immunity, Plaintiff plainly pled viable claims in the first place).

Defendants do not analyze this standard, but seem to suggest that there was no case "with a similar fact pattern that would have given 'fair and clear warning to officers' about what the law requires." (brief, pp 6-7, quoting *Arrington -Bay, supra*, 858 F.3d at 993, which quoted *White v Pauly*, ___ U.S. ___; 137 S. Ct. 548, 552; 196 L.  Ed. 2d 463 (2017). Any such suggestion cannot withstand analysis, since existing precedent placed the wrongfulness of Defendants' conduct beyond debate. *White, supra*, 137 S. Ct. at 551.

For example, in *Gable v Lewis*, 201 F.3d 769, 772 (6th Cir. 2000) the Sixth Circuit (with District Judge Cohn sitting by designation) held that First Amendment right-to-petition law was "clearly established" prior to the defendant Ohio Highway Patrol official's retaliation against a towing company operator for filing a complaint with the Ohio Highway Patrol, so the "doctrine of official immunity is inapplicable."

Defendants also later acknowledge clearly established First Amendment law: "'[P]lacement on a municipal tow rotation list is one such benefit that may not be denied a person because of his constitutionally protected speech.'" (brief, p 9, quoting *Lucas v Monroe Cty*., 203 F.3d 964, 972 (6th Cir. 2000), citing *O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712, 717; 116 S. Ct. 2353; 135 L. Ed. 2d 874 (1996).

Examples in other areas of the law are discussed below in context, following a further discussion regarding Heykoop's First Amendment claim.

Defendants relegate to a footnote their additional unfounded suggestion that Heykoop did not allege that Roesler was personally involved in the constitutional violations, and that claims against him in his supervisory capacity should be dismissed (brief, p 6, n 1). See generally, *Iqbal, supra*, 556 U.S. at 677. Defendants' suggestion lacks merit and relevance. Although as a matter of fact Roesler was White and McIntire's supervisor (Complaint, paragraphs 6-8), the Complaints' legal allegations against Roesler are for his own misconduct. Indeed, Roesler was the primary actor in Defendants' stonewalling of Heykoop's attempts to get back on the No-Pref Lists, ultimately forcing this litigation (*e.g.*, Complaint, paragraphs 20-23, 38, 55, and Appendices C-E).

## A.    First Amendment Retaliation.

Count II of the Complaint alleges First Amendment retaliation. Defendants assert a three-part test to "prevail" on a First Amendment retaliation claim (brief, p 9). To the extent that the test may be applicable to the pending Motion, the *Lucas* Court stated it as follows: "To prevail on their retaliation claim, Plaintiffs must establish (i) they were engaged in constitutionally protected conduct; (ii) that Defendants' adverse action caused them to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that conduct; and (iii) that the adverse action was motivated at least in part as a response to the exercise of their constitutional rights." 203 F.3d at 973.

Defendants contest the first element, asserting: "Plaintiff cannot show that he was participating in constitutionally protected activity . . . Plaintiff's cooperation with law enforcement was not protected activity covered by the First Amendment" (brief, p 10).

Defendants' assertion is plainly wrong, and tellingly unsupported by any authority. The First Amendment's Petition Clause protects "the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I. In *Gable, supra,* the Court explained in part that *California Transport v. Trucking Unlimited*, 404 U.S. 508; 92 S. Ct. 609; 30 L. Ed 2d 642 (1972) "clearly establishes that the submission of complaints and criticisms to nonlegislative and nonjudicial public agencies like a police department constitutes petitioning activity protected by the petition clause." 201 F.3d at 771. See also, *Cooper v Smith*, 98 F. 3d 761, 765 (11th Cir. 1996) ("An analysis of the case law reveals that it was clearly established at the time [Sheriff] refused to renew [Deputy's] commission that it was a violation of [Deputy's] First Amendment rights to take adverse action against him for cooperating with an official law enforcement investigation'").[6]

---

[6] Much of the case law involves public employees and therefore the heightened standard of the "public concern" test (essentially, to maintain order, a governmental agency may punish an employee for speech that is a matter of "private" concern rather than "public concern"). Defendants do not claim that the test applies here, and it does not, since Heykoop is a private business person. *Gable, supra*, 201 F.3d at 771-72. Moreover: "There can be no doubt that corruption in a police department is an issue of public concern." *Cooper, supra*, 89 F.3d at 765.

Defendants do not contest the second element (that their adverse action caused Heykoop to suffer an injury that would likely chill a person of ordinary firmness from continuing to cooperate with law enforcement). The chilling effect is also beyond credible dispute. See, for example, *O'Hare Truck Service, supra*, 518 U.S. at 723 ("A national association of towing and recovery service operators, appearing as *amicus*, estimates that 75 percent of towing companies provide services in connection with government requests, the referrals generating between 30 and 60 percent of their gross revenues"); *Lucas, supra*, 203 F.3d at 974 ("There is no doubt that such conduct [being removed from a towing list, thus ending the opportunity to receive towing business] would deter the average wrecker service operator from voicing similar criticisms of the Sheriff").

Defendants do challenge the third (retaliatory motive) element, first contending: "Defendants based their decision on Plaintiff's 'quality and type' of service,' and Plaintiff admits that at least one vehicle owner lodged a complaint about Eagle Towing" (brief, pp 10-11). Defendants misread (or misconstrue) the Complaint, which relevantly states:

> 15.    On or about November 9, 2017, ***Sheriff Mast removed Plaintiff from its wrecker rotation.***  On the same day he sent an email to Defendant White advising him to do the same.  The removal was ***allegedly based on one complaint from a vehicle owner over Plaintiff's customary charges***, which had been properly submitted to and paid without objection by the owner's automobile insurance carrier.

16.     On or about November 13, 2017, ***Defendant White sent a letter to Plaintiff informing Plaintiff that the Hart Post was removing Plaintiff from its No-Pref List. This letter did not refer to or mention any violation of Official Order 48, but rather stated the reason for removal as "the quality and type of service" provided by Plaintiff within the Post area***.   No other specifics were provided, nor was Plaintiff ever given an opportunity to respond to any concerns regarding the same.  A copy of this letter is attached as Exhibit B.

17.      Subsequent to Defendant White's letter, Defendant McIntire also removed Plaintiff from the No-Pref List, for the Rockford Post, also without cause.

                        *        *        *

19.   The ***stated reason*** in Sheriff Mast's and Defendant White's letters for Plaintiff's removal ***is a pretext; the true reason for the removal is retaliation for Plaintiff's having reported law enforcement, and Sheriff Mast's personal friend, in particular, for improper handling of salvage title inspection fees***." (Emphasis added).


Thus (and as further discussed in the Equal Protection and Due Process sections below), the Complaint plainly states that only one Defendant (White) offered any reason for removing Heykoop, and even that reason was a pretext. The only reference to a complaint against Heykoop was with regard to non-defendant Mast's pretext for removing Heykoop from another list, which is not at issue here. There is no basis for Defendants to assert that the alleged complaint even has a connection to Defendants removing Heykoop from the No-Pref Lists, let alone that

it provided "justification for Eagle Towing's removal from the No-Preference Lists independent of plaintiff's alleged protected conduct" (brief, p 11).[7]

Defendants further assert that "Plaintiff's cooperation with law enforcement officials (the protected activity alleged) occurred in June 2015 – more than two years prior to Eagle Towing's removal from the No-Preference Lists (the adverse action alleged). This passage of time renders any causal connection between the protected activity and the adverse action too attenuated to meet the standard for First Amendment retaliation" (brief, p 11). There is no such time bar for First Amendment retaliation claims. Defendants appear to have misread caselaw reflecting that retaliation can rarely be supported with direct evidence of intent, so retaliatory motive can be inferred from circumstantial evidence like the timing of events, with the strength of the inference depending in part on temporal proximity. See, for example, *Vereecke v Huron Valley School Dist.*, 609 F.3d 392, 400-401(6th Cir. 2010); *Hazel v. Quinn*, 933 F. Supp. 2d 884, 888-90 (E.D. Mich. 2013). See also, *Lucas, supra*, 203 F.3d at 975-76 (explaining, in the context of a political patronage discussion, that a "smoking gun" is not required, instead, a jury can reject the

---

[7] Defendants' assertion of an "independent justification" also appears to have no relevance, since Defendant's own three-part test (quoted above) requires only partial causation.

defendant's explanation and infer an improper motive from circumstantial evidence).

While the passage of time may generally require a plaintiff to supply additional evidence, this is a Rule 12(b)(6) Motion where the Complaint's factual allegations are assumed to be true (as discussed in the Standard of Review). The temporal proximity is also a lot closer when one considers the timing of Wilson's conviction and sentencing, and the State Attorney General's further criminal investigation, charging and conviction of MSP officers (Complaint, paragraphs 13 and 14).[8] In any event, at this point (before discovery has a chance to develop the evidence), Defendants' suggestion that Heykoop has failed to carry his evidentiary burden lacks relevance.

## B.    Equal Protection.

Count I of the Complaint alleges an Equal Protection violation. The Fourteenth Amendment provides, in part: "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, §1. Defendants correctly note (brief, p 7) that in *Warren v City of Athens, Ohio*, 411 F.3d 697, 710 (6th Cir. 2005), the Court stated: "Equal protection claims can be brought

---

[8] News organizations also report ongoing investigations into widespread corruption (essentially towing companies bribing public officials, who in turn, reward their benefactors with lucrative profits from a greater share of an area's towing business, while punishing those who oppose such illegal practices by restricting their towing businesses, with corresponding economic losses).

by a 'class of one,' where the plaintiff alleges that the state treated the plaintiff differently from others similarly situated and that there is no rational basis for such difference in treatment."

Defendants do not dispute that they treated Heykoop differently than other towing companies. Instead, they claim that that White's letter alleged a "rational basis" to remove him from the No-Pref Lists based on "the quality and type of service that Eagle Towing has provided" (brief, p 8). As discussed above, the Complaint plainly states that only one Defendant (White) offered any reason for removing Heykoop, and even that reason was a pretext. Defendants also go on to acknowledge (brief, p 8) that Paragraph 19 of the Complaint (fully quoted above) states that the alleged reason in White's letter  "*is a pretext; the true reason for the removal is retaliation for Plaintiff's having reported law enforcement, and Sheriff Mast's personal friend, in particular, for improper handling of salvage title inspection fees*." (Emphasis added).

Defendants assert that there was an (alleged) complaint against Heykoop, but he "does not allege that MSP received complaints about any other towing company who, by contrast, remained on the No-Preference lists" (brief, p 8). As discussed above, the only reference to a complaint against Heykoop was with regard to non-party Mast's pretext for removing Heykoop from another list, which is not at issue here. ***There is no basis for Defendants to assert that the MSP ever received any***

***complaint against Heykoop.*** There is also no basis for Defendants to assert that the alleged complaint indicated by Mast has any connection to Defendants removing Heykoop from the No-Pref Lists.

Defendants also attempt to support their "rational basis" claim by asserting that there are "requirements for towing companies outlined in MSP Official Order 48" (brief, p 8). It is true that Official Order 48 sets forth "requirements for towing companies," but Defendants violated those requirements.

More specifically, even if there were a complaint against Heykoop filed with the MSP (and there is no reason to believe there was), then Official Order 48 set forth specific requirements that Defendants violated, including (1) creation and retention of documentation regarding the complaint (there is none), (2) treating Heykoop the same as other towing services (Defendants did not), (3) providing notice of the complaint to Heykoop, and an opportunity to cure alleged concerns and therefore remain on the No-Preference List (Defendants – including White's letter on its face - provided no notice of any complaint, nor any opportunity for Heykoop to remain on the No-Preference List), and (4) giving Heykoop an opportunity to be heard "before administrative or disciplinary action can be taken." (Defendants – including White's letter on its face - gave Heykoop no opportunity to be heard at all). Official Order 48's Complaint Procedures relevantly state:

"COMPLAINT PROCEDURES

"A. Complaint Against a Wrecker Service.

"(1)     Problems with or *complaints about a wrecker service shall be documented by the work site commander*. The *documentation shall be retained for* the duration of the wrecker service's contract with the department, or *their time on the wrecker list, plus two years*.

\*          \*          \*

"(4)     *Each wrecker service shall be held to identical standards of conduct or performance*.

"(5)     When a complaint is received concerning the performance or rate change of a wrecker service or the service is not adhering to the requirements established by this Order, the complaint shall be immediately investigated.

"a.      *Unless extenuating circumstances exist, a wrecker service shall not have their contract cancelled or be removed from the no-preference wrecker call list without an investigation* by the work site commander or their designee.

"b.      If it is found that the wrecker service failed to comply with the requirements of this order, *a written notice shall be sent describing the complaint and the action needed to maintain a position on the no-preference wrecker call list*.

"c.      *Wrecker services shall be notified* of any non-compliance with accepted standards of conduct in a timely manner, and *advised they have a right to an appeal in writing to the work site commander before administrative or disciplinary action can be taken*. The written notice shall indicate that additional complaints could result in removal from the list" (Official Order 48, §48.3.12, attached at Complaint, Appendix A. Emphasis added).

Official Order 48's Complaint Procedures repeatedly use the term "shall,"

which denotes a mandatory duty and excludes the idea of Defendants having any

administrative discretion to act otherwise. *Macomb Co. Rd. Comm'n. v. Fisher*, 170 Mich. App. 697, 700; 428 N.W.2d 744 (1988); *Southfield Twp. v Drainage Bd.*, 357 Mich. 59, 76-77; 97 N.W.2d 281 (1959) ("the word 'shall' is mandatory and imperative and, when used in a command to a public official, it excludes the idea of discretion").

Defendants suggest that Heykoop's retaliation allegations do not sufficiently allege "animus or ill-will" against them (brief, p 8-9). This suggestion is an unfounded attempt to fit within language from *Warren, supra*.[9] Defendants neglect that "retaliate" means "to repay (as an injury) in kind . . . to get revenge." *Merriam Webster's Collegiate Dictionary* (11th ed.).[10]

Heykoop's Complaint satisfies Fed. R. Civ. P. 8(a), as discussed above in the Standard of Review. In the interest of civility, Heykoop avoided using more inflammatory language to describe how Defendants took revenge on him due to his efforts to help convict criminals. Moreover, the "animus or ill will" option (in

---

[9] The *Warren* Court stated: "A 'class of one' plaintiff may demonstrate that a government action lacks a rational basis in one of two ways; either by 'negativ[ing] every conceivable basis which might support' the government action or by demonstrating that the challenged government action was motivated by animus or ill will." 411 F. 3d at 711 (citations omitted).

[10] There are various dictionaries, but the Michigan Supreme Court recently used this dictionary in *Covenant Medical Center v State Farm Mut. Ins. Co.*, 500 Mich. 191; 895 N.W.2d 490 (2017) and *City of Coldwater v Consumers Energy Co.*, 500 Mich. 158; 895 N.W.2d 154 (2017).

the quote from *Warren* above) concerns an evidentiary demonstration so it does not apply at this Rule 12(b)(6) stage of the proceedings. Going forward in this case, the option may not even be necessary because (1) Defendants do not dispute that they treated Heykoop differently than other towing companies; and (2) Defendants' multiple violations of Official Order 48 and other misconduct (outlined above) reflects that they had no rational basis for their unique, detrimental treatment of Heykoop. In any event, Heykoop pled a viable Equal Protection claim, and Defendants have no basis in fact or law to claim qualified immunity.

## C.    Due Process.

Count III of the Complaint alleges a Due Process violation. The Fourteenth Amendment provides, in part: "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, §1. "Procedural due process generally requires that the state provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest." *Warren, supra*, 411 F.3d at 708 (finding procedural due process violation).

Defendants do not claim that they provided Heykoop with any notice or opportunity to be heard (nor is there any basis for Defendants to make such a claim, as discussed in part above in the Equal Protection section). Instead, Defendants challenge only the preliminary requirement that Heykoop must have a property interest subject to due process protection (brief, pp 11-12). Defendants' abstract

17

argument makes no relevant point in the context of this case, and ignores that paragraph 48 of the Complaint plainly states: "Plaintiff has a protected property interest in its placement on the No-Pref List pursuant to MSP policy as set out in Official Order 48."

More specifically, Defendants correctly (but irrelevantly) point out that a mere unilateral expectation of continuing to receive a benefit is not enough to create a property interest.[11] Defendants then note that in *Lucas, supra*, and another case that followed *Lucas*, the courts found no protected property interest in remaining on a towing list. Defendants then summarily conclude that Heykoop also had no property interest in remaining on the No-Pref Lists. Defendants completely disregard the facts and avoid any analysis. The *Lucas* Court explained, in part:

> "'[A] property interest exists and its boundaries are defined by "rules and understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits that support claims of entitlement to those benefits."' *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 141 (6th Cir. 1997) (quoting *Roth*, 408 U.S. at 577, 92 s. Ct. 2701).

> "In the instant case, however, Plaintiffs can point to no ordinance, contract or other 'rules or mutually explicit understandings' that support their claim of entitlement to remain on the stand-by list. See

---

[11] "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577; 92 S. Ct. 2701; 33 L. Ed. 2d 548 (1972).

*Perry v. Snidermann*, 408 U.S. 593, 601; 92 S. ct. 2694; 33 L. Ed. 2d 570 (1972)." *Lucas, supra*, 203 F.3d at 978.[12]

In stark contrast, Heykoop has a protected property interest based on Official Order 48, as alleged paragraph 48 of Heykoop's Complaint (quoted above). Defendants also acknowledge "requirements for towing companies outlined in MSP Official Order 48" (brief, p 8). Numerous Courts have found protected property interests based on similar facts. For example, in *Gregg v. Larson*, 732 F. Supp. 849 (E.D. Tenn. 1989), the Court held that the plaintiff had the required "legitimate claim of entitlement" (quoting *Roth, supra*) in remaining on the wrecker tow list based on "rules or mutually explicit understandings" (quoting *Perry, supra*), reasoning that "several references to and procedures for removal or suspension from the list to compel compliance with the regulations reflect the mutual nature of the relationship established by inclusion on the list." 732 F. Supp. at 853.

Similarly, Official Order 48's Complaint Procedures (quoted in part above in the Equal Protection section) sets forth detailed procedures for towing companies to comply with certain requirements or perhaps (after notice and an opportunity to be heard regarding allegations) be removed from No-Pref Lists. Thus, Official Order

---

[12] The *Perry* Court more fully stated: "A person's interest in a benefit is a property interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." 408 U.S. at 601. The Court also explained that a property right is not required to maintain a First Amendment retaliation claim. 408 U.S. at 597.

48 constitutes "rules or mutually explicit understandings" that gave Heykoop a "legitimate claim of entitlement," and therefore a property interest protected by due process, to remain on the No-Pref lists.

The *Lucas* Court, on completely different facts in that case, distinguished *Gregg*, stating:

> "In this case, there are no such established 'procedures' for suspension or removal. The written policies of the Sheriff's Department – however unfair they may be – explicitly provide that a wrecker company may be immediately removed from the list upon making a complaint to an unauthorized person. As a result, these policies did not create a legitimate claim of entitlement to remaining on the tow list even after making such complaints." *Lucas, supra*, 203 F. 3d at 978.

Defendants do not, and cannot, point to any facts here that are even remotely analogous to *Lucas,* where "written policies . . . explicitly provide[d] that a wrecker service may be immediately removed from the list." Defendants also ignore cases (like *Gregg*) with analogous facts. Moreover, the right to not be summarily removed from a towing referral list administered under state law is "clearly established," and Official Order 48 set forth explicit requirements that Defendants were required to follow. Any reasonably official in Defendants' positions would have known that they were violating Heykoop's rights. Therefore, Defendants' qualified immunity defense fails.

Further guidance by analogy is provided by *Pritchett v. Alford*, 973 F.2d 307 (4th Cir. 1992), where a wrecker company operator provided information to a

highway department internal investigation regarding a "kickback" scheme in which highway patrol officers allegedly took money in exchange for calling certain wrecker companies to accident scenes before their names appeared at the top of the rotating wrecker list. The wrecker company was then summarily removed from the list (like Defendants did to Heykoop). The Court held that a wrecker service had a protected property interest in remaining on a wrecker-referral list administered by the South Carolina Highway Patrol pursuant to State regulations, and rejected the defendants' qualified immunity defense because the constitutional right to not be summarily removed from the list was "clearly established." 973 F.2d at 317-18. More than a quarter century ago, the Court set forth the following explanation that still applies today:

> "We agree with the district court that any reasonably competent official in [the police official's] position charged, as they would be, with knowing the general due process principles above outlined, must also be charged with making the obvious application of those principles to the facts of this case. That being on the list was a benefit having economic value was manifest. . . That being on it by virtue of this state regulatory regime insured that it was a legally enforceable entitlement rather than a mere unilateral expectation was also manifest to any reasonably competent official charged with knowledge, as they must be, of the regulatory regime they were required to enforce . . .

> "The district court rightly held that the specific constitutional right asserted by [the wrecker company and its owner] not to be removed summarily from the wrecker list was a clearly established right of which any reasonably competent official in [the police official's] position would have known. We therefore affirm the court's rejection, as a matter of law, of [the police official's] qualified immunity defense." (973 F.2d at 317-18).

Another analogous case is *Abercrombie v. City of Catoosa*, 896 F.2d 1228 (10th Cir. 1990), where the operator of a wrecker service testified as a witness against the defendant City's mayor, and supported a different mayoral candidate. The wrecker service was then removed from the wrecker rotation log used by police dispatchers, and therefore no longer received wrecker referrals from the police. The Court held that the wrecker service had a property interest protected by due process in continuing to be on the wrecker rotation log, which was regulated under state law. 896 F.2d at 1231-32.

In summary, Heykoop had a property interest protected by Due Process. Defendants also do not and cannot dispute that they removed Heykoop from the No-Pref Lists without notice and an opportunity to be heard. Therefore, Plaintiff pled a viable Due Process claim. Defendants violated Heykoop's "clearly established" rights, so their qualified immunity defense fails.

**D.   Conspiracy.**

Count IV of the Complaint alleges a conspiracy. Defendants suggest that Heykoop did not plead it with sufficient specificity (brief, p 13). The Court recently found that "the pleadings are sufficient to plausibly infer" a civil conspiracy in *Stillwagon v. City of Delaware*, 175 F. Supp. 3d 874, 902 (S.D. Ohio, 2016). The Court summarized the claim and pleading standard as follows:

"A civil conspiracy under § 1983 is an agreement between two or more persons to injure another by unlawful action. *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). To prevail on a civil conspiracy claim, a plaintiff must show that (1) a single plan existed, (2) the alleged coconspirator shared in the general conspiratorial objective, and (3) an overt act was committed in furtherance of the conspiracy that caused injury to the plaintiff. *Id*. Civil conspiracy must be pleaded with some degree of specificity. *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003). Vague and conclusory allegations are insufficient to state a claim. *Id*. A plaintiff, however, need not allege or produce direct evidence of a conspiracy; 'circumstantial evidence may provide adequate proof.' *Id*. (quoting *Weberg v. Franks*, 229 F.3d 514, 528 (6th Cir. 2000))." 175 F. Supp. 3d at 901-902.

Defendants assert that Heykoop "merely offers . . . conclusory statements" (brief, p 13). Defendants neglect that the first paragraph of Count IV (the final § 1983 count) "incorporates all preceding paragraphs" (Complaint, paragraph 59). As discussed above, those paragraphs describe how Defendants retaliated against Heykoop for reporting Wilson's criminal conduct to the authorities (the plan and conspiratorial objective), and how Defendants summarily removed Heykoop from No-Pref Lists, causing him significant economic loss due to the reduction in towing referrals (overt acts that caused injury to Heykoop). Heykoop's allegations are "sufficient to plausibly infer" that Defendants engaged in a civil conspiracy. *Stillwagon, supra*, 175 F. Supp. 3d at 902.

To the extent that the Court may disagree, Heykoop requests that the Court grant leave to amend the Complaint under Fed. R. Civ. P. 15(b). Defendants maintain, however, that the present Complaint is sufficiently clear, and that adding

detail (or redundancy) as Defendants suggest would simply add time and expense to this litigation, with no practical benefit.

## CONCLUSION AND REQUEST FOR RELIEF

Heykoop acknowledges that the MSP may be dismissed as a party based on the Eleventh Amendment, and that Count V may be dismissed in its entirety base on mootness; however, the remainder of Heykoop's Complaint (Counts I-IV, alleging 42 U.S.C § 1983 claims against White, McIntire, and Roesler for retaliating against Heykoop for reporting criminal conduct to law enforcement officials) pleads viable claims for which there is no qualified immunity under "clearly established" law. Therefore, Heykoop respectfully requests that the Court deny Defendants' Motion to Dismiss Counts I-IV against Defendants White, McIntire, and Roesler.

Respectfully submitted,

FAHEY SCHULTZ BURZYCH RHODES PLC
Counsel for Plaintiff

Dated:  August 3, 2018          By: __/s/John S. Brennan_____
John S. Brennan (P55431)
4151 Okemos Road
Okemos, Michigan 48864
(517) 381-0100
jbrennan@fsbrlaw.com

24