UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN HEYKOOP doing business as
EAGLE TOWING,

     Plaintiff,

v

MICHIGAN STATE POLICE, DAVID
ROESLER, JEFFREY WHITE, and
CHRIS McINTIRE,

     Defendants.

NO. 1:18-cv-00632

HON. ROBERT J. JONKER

MAG. PHILLIP J. GREEN

---

| | |
|---|---|
| Christopher Scott Patterson (P74350)<br>John Seamus Brennan (P55431)<br>Fahey Schultz Burzych Rhodes PLC<br>Attorney for Plaintiff<br>4151 Okemos Road<br>Okemos, MI  48864<br>517.381.0100 | Patrick S. Myers (P81444)<br>Assistant Attorney General<br>Attorney for Defendant<br>Complex Litigation Division<br>P.O. Box 30736<br>Lansing, MI  48909<br>517.335.3055 |

        /

## BRIEF IN SUPPORT OF DEFENDANTS JEFFREY WHITE AND CHRIS McINTIRE'S MOTION FOR SUMMARY JUDGMENT

Dana Nessel
Attorney General

*s/Patrick S. Myers*
Patrick S. Myers (P81444)
Assistant Attorney General
Attorney for Defendants
Complex Litigation Division
P.O. Box 30736
Lansing, MI  48909
517.335.3055
myersp4@michigan.gov
P81444

Dated: March 29, 2019

## CONCISE STATEMENT OF ISSUES PRESENTED

1.     Should this Court grant qualified immunity to Defendants White and
McIntire as to Plaintiff's claims?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

<u>*Authority*</u>:

*Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988 (6th Cir. 2017)

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)

*Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365 (6th Cir. 2011)

*Lucas v. Monroe Cnty.*, 203 F.3d 964 (6th Cir. 2000)

*Med Corp. v. City of Lima*, 296 F.3d 404 (6th Cir. 2002)

*Spadafore v. Gardner*, 330 F.3d 849 (6th Cir. 2003)

*Warren v. City of Athens*, 411 F.3d 697 (6th Cir. 2005)

*Wright v. Genesee Cty. Corp.*, 659 F. Supp. 2d 842 (E.D. Mich. 2009)

## STATEMENT OF FACTS

Plaintiff is the owner and operator of Eagle Towing, a towing company. (Compl., R. 1, ¶ 4, Page ID # 2.)  Defendants Jeffrey White and Chris McIntire are officers of the Michigan State Police ("MSP").  Defendant White is the first lieutenant and commander of MSP's Hart Post and Defendant McIntire is the first lieutenant and commander of MSP's Rockford Post.  (Compl., R. 1, ¶¶ 7-8, Page ID ## 2-3.)  This dispute arises from Eagle Towing's removal from the Hart and Rockford Posts' No-Preference Wrecker Call Lists ("No-Preference Lists").

MSP Official Order 48 establishes the policy and procedures for MSP's use of wrecker services.  (Compl., R. 4, Page ID ## 88-109.)  Official Order 48 provides MSP commanders the option of establishing a No-Preference List or contracting with local towing companies.  (Compl., R. 4, Page ID # 97.)  A No-Preference List is a list of towing companies used by MSP when a motorist in need of such services expresses no preference for a particular company.  (Compl., R. 1, ¶ 9, Page ID # 3.)  Official Order 48 delineates certain requirements a towing company must meet to be placed on a No-Preference List.  (Compl., R. 4, Page ID ## 99-104.)  One requirement is that "[d]rivers and representatives of the wrecker service shall be professional and courteous in their dealings with the public."  (Compl., R. 4, Page ID # 100.)  Another requirement is that "[r]easonable rates based on local industry standards shall be used for all services provided."  (Compl., R. 4, Page ID # 103.)  The order also states:

> Wrecker services interested in working with the Michigan State
> Police shall agree to abide by the following requirements for the
> duration of their association with the department.  Failure to comply

with all of these requirements may be cause for termination of the
contract or removal from the no-preference wrecker call list as
provided in this Order.

(Compl., R. 4, Page ID # 99.)  MSP policy mandates that Official Orders "shall be

followed except under circumstances or in situations deemed by the Director to be in

the best interest of [MSP] to do otherwise."  (Defs.' Ex. 1, MSP Official Order

Preamble).

The MSP Hart and Rockford Posts both use No-Preference Lists, and where

possible attempt to use the same towing companies as local law enforcement

agencies in their jurisdictions.  (Defs.' Ex. 2, Def. White's Dep., p. 40).  Consequently

(and for efficiency), the Hart Post's No-Preference List is maintained and

administered by the Mason-Oceana County 911 Central Dispatch, and the Rockford

Post's No-Preference List is maintained and administered by the Muskegon County

911 Central Dispatch.  (*Id.*, p. 17; Defs.' Ex. 3, Def. McIntire's Dep., pp. 11, 13).

Eagle Towing was placed on the Posts' No-Preference Lists for at least seven years

until its removal in 2017.  (Defs.' Ex. 4, Pl.'s Resp. to Defs.' Interrogatories, p. 3).

Eagle Towing remains on several local law enforcement agencies' No-Preference

Lists.  (Defs.' Ex. 5, Pl.'s Dep., pp. 12-13).  Plaintiff also owns another towing

company, Quinn's Towing, which is on the Hart Post's No-Preference List.  (*Id.*, p.

24).

Beginning in 2014, Defendants began to receive (or became aware of)

numerous complaints about Eagle Towing's service, employees, and charges within

their jurisdictions.  Several of these complaints were made to local law enforcement

agencies, which—like the Hart and Rockford Posts—used Eagle Towing as one of the towing companies on their No-Preference Lists.  (Defs.' Ex. 6, Complaints).  Defendants also received verbal complaints from citizens and from MSP troopers about Eagle Towing.  (Ex. 2, pp. 24, 49-50; Ex. 3, pp. 15-16, 19-20, 55-58).  In November 2016, Ray Hasil, Director of the Mason-Oceana County 911 Central Dispatch, conducted an investigation into several complaints against Eagle Towing, in which he found that Eagle Towing had charged unreasonably high rates and that Eagle Towing was uncooperative with the investigation and with the complainants.  (Defs.' Ex. 7, Summary of Investigation).  On November 9, 2017, Oceana County Sheriff Craig Mast removed Eagle Towing from the Oceana County Sheriff's Office No-Preference List for complaints regarding Eagle Towing's business practices.  (Defs.' Ex. 8, Letter from Sheriff Mast).  The same day, Sheriff Mast notified several other law enforcement agencies whose No-Preference Lists were maintained and administered by the Mason-Oceana County 911 Central Dispatch.  (Defs.' Ex. 9, Email from Sheriff Mast).

On November 13, 2017, Defendant White sent Plaintiff a letter informing him that Eagle Towing would be removed from the Hart Post's No-Preference List based on "the quality and type of service that Eagle Towing has provided within the Hart Post are[a]."  (Compl., R. 1-5, Page ID # 21.)  Defendant White testified that he removed Eagle Towing from his Post's list because Eagle Towing was uncooperative in responding to complaints lodged by citizens and law enforcement agencies.  (Ex. 2, pp. 24, 49-50).  This removal was based on Defendant White's determination that

3

Eagle Towing had violated Official Order 48's requirement that "[d]rivers and representatives of the wrecker service shall be professional and courteous in their dealings with the public." (Compl., R. 4, Page ID # 100.) Defendant White testified that he notified Defendant McIntire of his decision because of their Posts' adjacent jurisdictions, but that he did not advise Defendant McIntire to remove Eagle Towing from the Rockford Post's No-Preference List. (Defs.' Ex. 10, Email from Def. White; Ex. 2, pp. 103-105).

On December 14, 2017, Defendant McIntire removed Eagle Towing from the Rockford Post's No-Preference List due to the "unacceptable service" Eagle Towing provided in the Rockford Post area. (Defs.' Ex. 11, Letter from Def. McIntire). Defendant McIntire testified that he removed Eagle Towing from his Post's list because of complaints he had received or become aware of regarding Eagle Towing's charges. (Ex. 3, pp. 15-16, 19-20, 56-58). This removal was based on Defendant McIntire's determination that Eagle Towing had violated Official Order 48's requirement that "[r]easonable rates based on local industry standards shall be used for all services provided." (Compl., R. 4, Page ID # 103.) Defendant McIntire also stated that while Eagle Towing's removal from the Hart Post's No-Preference List after an investigation was a factor in his decision, he alone made the determination to remove Eagle Towing from the Rockford Post's No-Preference List. (Ex. 3, p. 20; Defs.' Ex. 12, Defs.' Resp. to Pl.'s Interrogatories, p. 4).

During their depositions, Defendants White and McIntire acknowledged that in removing Eagle Towing from the No-Preference Lists, they did not precisely

follow the complaint and removal procedures of MSP Official Order 48. (Ex. 2, p. 81; Ex. 3, p. 125). However, Eagle Towing was made aware of several complaints lodged against it and of Director Hasil's investigation. (Ex. 6; Ex. 7). Eagle Towing also agreed to abide by Official Order 48, which provided that failure to comply with any of the requirements could be cause for removal from a No-Preference List. (Compl., R. 4, Page ID # 99.)

According to Plaintiff, Defendants' stated justifications were pretextual; instead, Plaintiff alleges, the removal of Eagle Towing from the No-Preference Lists was retaliation for Plaintiff's reporting wrongdoing by Robert Wilson, the former Chief of Police for the Village of Shelby in Oceana County, "a close friend" of Sheriff Mast. (Compl., R. 1, ¶ 19, Page ID ## 3-5.) In his deposition, Plaintiff stated that he spoke with Chelsea Stratil, Village of Shelby administrator, regarding Wilson and salvage vehicle inspections. (Ex. 5, pp. 22-23). Plaintiff testified that he did not speak with Defendant White or McIntire about Wilson, or request that Stratil notify either of Defendants or forward that information to anyone. (*Id.*, pp. 23-24). Stratil contacted the Hart Post on December 18, 2015 to report a complaint of embezzlement by Wilson. (Defs.' Ex. 13, MSP Incident Report, p. 1). Stratil stated that "sometime around October 2015 an anonymous person informed her that Robert Wilson was doing salvage vehicle inspections and that the city should be receiving the funds." (*Id.*, p. 4).

Plaintiff further alleges that "[u]pon information and belief, other towing companies within the Rockford and Hart Posts enjoy placement on the No-

Pref[erence] List, and receive service calls as a result of such placement, yet they do not meet the requirements of Official Order No. 48." (Compl., R. 1, ¶ 22, Page ID # 6.)  In response to Defendants' interrogatories, Plaintiff stated that because other towing companies on the No-Preference Lists did not provide the required documentation, they were not in compliance with Official Order No. 48.  (Ex. 4, p. 3).  Both Defendants testified they did not strictly adhere to the documentation requirements of Official Order 48.  (Ex. 3, pp. 47-48).  However, Defendant McIntire stated that he only received complaints about Eagle Towing, and Defendant White stated that besides one complaint about other company, he had only received complaints about Eagle Towing.  (Ex. 12, p. 3).

On June 5, 2018, Plaintiff filed this suit under 42 U.S.C. §1983 against MSP, Captain David Roesler (the captain and commander of MSP District 6-West, which encompasses both the Hart and Rockford Posts, during the relevant time period), White, and McIntire, alleging that the removal of Eagle Towing from the Hart and Rockford Posts' No-Preference Lists violated his constitutional rights.  Plaintiff also alleged that MSP and White tortiously interfered with Eagle Towing's business expectancy and relationship with Electric Forest, LLC.  On July 11, 2018, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Motion to Dismiss, R. 11.)  On August 3, 2018, the Court held a scheduling conference and on August 6, 2018, granted in part and denied in part Defendants' motion, dismissing MSP and Roesler and Plaintiff's tortious interference claim.  (Order, R. 16, Page ID # 179.)

## LEGAL STANDARD

A motion for summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where no genuine issue of material fact remains to be decided and the moving party is entitled to judgment as a matter of law. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989). In assessing a summary judgment motion, the court must examine any pleadings, depositions, answers to interrogatories, admissions and affidavits in a light that is most favorable to the non-moving party. *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005). If the moving party establishes an absence of evidence in support of the non-moving party's case, the "nonmoving party must present affirmative evidence to defeat [the] properly supported motion for summary judgment." *Fogerty v. MGM Group Holdings Corp, Inc.*, 379 F.3d 348, 353 (6th Cir. 2004) (citation omitted). To sustain this burden, the non-moving party cannot rest solely on the allegations made in the pleadings, but must set forth by affidavits or otherwise specific facts showing that there is a genuine issue for trial. *Skousen v. Brighton High Sch.*, 305 F.3d 520, 527 (6th Cir. 2002).

The party responding to the motion must "adduce more than a scintilla of evidence to overcome the motion." *Street*, 886 F.2d at 1479. "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Colvin v. Caruso*, 605 F.3d 282, 288 (6th Cir. 2010), quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986). A motion for summary judgment should be granted if "the nonmoving party has failed to make a sufficient showing

7

on an essential element of her case with respect to which she has the burden of

proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## ARGUMENT

## I.    Defendants White and McIntire are entitled to qualified immunity for Plaintiff's claims.

Plaintiff brings this suit under 42 U.S.C. §1983, alleging that Defendants

conspired to deprive him of his rights to petition the government, equal protection,

and procedural due process.  For Section 1983 claims, "qualified immunity prevents

government officials from being held liable if (1) the officers did not violate any

constitutional guarantees or (2) the guarantee, even if violated, was not 'clearly

established' at the time of the alleged misconduct."  *Arrington-Bey v. City of Bedford

Heights*, 858 F.3d 988, 992 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 738 (2018), citing

*Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  For a constitutional right to be

clearly established, "[t]he contours of the right must be sufficiently clear that a

reasonable official would understand that what he is doing violates that right."

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

### A.    Plaintiff cannot establish his First Amendment retaliation claim because there is no evidence that Eagle Towing's removal from the No-Preference Lists was motivated in any way by Plaintiff's reporting of misconduct.

Plaintiff alleged First Amendment retaliation under 42 U.S.C. § 1983.  A

plaintiff bringing such a claim must show "that (1) the plaintiff was participating in

a constitutionally protected activity; (2) the defendant's action injured the plaintiff

in a way likely to deter a person of ordinary firmness from further participation in

that activity; and (3) the adverse action was motivated at least in part by the

plaintiff's protected conduct." *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 371 (6th Cir. 2011) (citations omitted). "Although the elements of a First Amendment retaliation claim remain constant, the underlying concepts that they signify will vary with the setting—whether activity is 'protected' or an action is 'adverse' will depend on context." *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999) (en banc). "[P]lacement on a municipal tow rotation list is one such benefit that may not be denied a person because of his constitutionally protected speech." *Lucas v. Monroe Cty.*, 203 F.3d 964, 972 (6th Cir. 2000), citing *O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712, 717 (1996).

Here, there is no evidence to support Plaintiff's First Amendment retaliation claim. Plaintiff testified that he spoke with Chelsea Stratil, the administrator for the Village of Shelby, regarding Wilson and salvage vehicle inspections. (Ex. 5, pp. 22-23). Plaintiff never spoke with Defendant White or McIntire about Wilson, and never requested that Stratil notify either of Defendants or forward that information to law enforcement officials. (*Id.*, pp. 23-24). Stratil, not Plaintiff, contacted MSP on December 18, 2015 to report embezzlement by Wilson. (Ex. 13, p. 1). Stratil informed the Hart Post that "sometime around October 2015 an anonymous person informed her that Robert Wilson was doing salvage vehicle inspections and that the city should be receiving the funds." (*Id.*, p. 4). There has been no testimony that Defendants were even aware of Plaintiff's conversation with Stratil. And there has been no evidence that Defendants removed Eagle Towing from the No-Preference Lists for any reason related to Wilson. Plaintiff cannot establish that Eagle

Towing's removal from the No-Preference Lists was "motivated at least in part" by his reporting of misconduct.  *Napolitano*, 648 F.3d at 371.  Because Plaintiff cannot show that his First Amendment rights were violated, Defendants are entitled to qualified immunity for Plaintiff's First Amendment retaliation claim.

> **B.    Plaintiff cannot establish his equal protection claim because no other towing companies were similarly situated to Eagle Towing, and because Defendants had a rational basis for removing Eagle Towing from the No-Preference Lists.**

Plaintiff claims that the removal of Eagle Towing from the No-Preference Lists violated the Equal Protection Clause of the Fourteenth Amendment.  The Equal Protection Clause states that no State shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  This Clause "embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly."  *Vacco v. Quill*, 521 U.S. 793, 799 (1997) (citation omitted).  "Equal protection claims can be brought by a 'class of one,' where the plaintiff alleges that the state treated the plaintiff differently from others similarly situated and that there is no rational basis for such difference in treatment." *Warren v. City of Athens*, 411 F.3d 697, 710 (6th Cir. 2005), citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  "Class-of-one claims are generally viewed skeptically because . . . [i]t is always possible for persons aggrieved by government action to allege, and almost always possible to produce evidence, that they were treated differently from others."  *Wells ex rel. Bankr. Estate of Arnone-Doran v. City of Grosse Pointe Farms*, 581 F. App'x 469, 476 (6th Cir. 2014), quoting *Loesel v. City of Frankenmuth,* 692 F.3d 452, 461–62 (6th Cir. 2012).

"When evaluating whether parties are similarly situated, 'courts should not demand exact correlation, but should instead seek relevant similarity.'" *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 864–65 (6th Cir. 2012), quoting *Perry v. McGinnis,* 209 F.3d 597, 601 (6th Cir. 2000). "The 'rational basis' test means that courts will not overturn government action 'unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that the [government's] actions were irrational.'" *Id.* (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 84 (2000)). "A 'class of one' plaintiff may demonstrate that a government action lacks a rational basis . . . either by 'negativ[ing] every conceivable basis which might support' the government action or by demonstrating that the challenged government action was motivated by animus or ill-will." *Warren*, 411 F.3d at 711, citing *Klimik v. Kent Cty. Sheriff's Dept.*, 91 Fed. Appx. 396, 400 (6th Cir. 2004); *Bower v. Vill. of Mount Sterling*, 44 Fed. Appx. 670, 677–78 (6th Cir. 2002).

Here, there is insufficient evidence to support Plaintiff's class of one equal protection claim. Defendants based their decisions to remove Eagle Towing from the No-Preference Lists on the quality and type of service that Eagle Towing provided. Defendants have testified they received numerous informal complaints about Eagle Towing, its service, and its charges, and that Plaintiff did not cooperate with them or with the complainants. (Ex. 2, pp. 24, 49-50; Ex. 3, pp. 15-16, 19-20, 55-58). They also stated that they have received few, if any, complaints about other

11

towing companies.  (Ex. 12, p. 3).  There has not been any evidence that other towing companies were similarly situated to Eagle Towing with respect to complaints.  *See Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) ("The Equal Protection Clause . . . keeps governmental decisionmakers from treating differently persons who are in *all relevant* respects alike.") (emphasis added).  Thus, Plaintiff cannot establish that Eagle Towing was treated differently from other towing companies similarly situated.

Moreover, Plaintiff has not provided evidence that negates Defendants' rational basis to remove Eagle Towing from the No-Preference Lists.  Defendants removed Eagle Towing because Eagle Towing did not comply with the requirements of MSP Official Order 48.  MSP and its Post commanders have a legitimate interest in ensuring that towing companies used by MSP conform to certain standards of quality and service.  The requirements for towing companies outlined in MSP Official Order 48 reflect this commitment.  (Compl., R. 4, Page ID ## 99-104).  In a case involving a towing company's removal from Genesee County's No-Preference List, the Eastern District of Michigan held that prior citizen complaints, *inter alia*, "constitute[d] plausible policy reasons" to justify removal and satisfy rational basis review.  *Wright v. Genesee Cty. Corp.*, 659 F. Supp. 2d 842, 851 (E.D. Mich. 2009).

Furthermore, there has not been any evidence of animus by any of Defendants.  Defendants have not testified as to any personal ill-will towards Plaintiff—indeed, Plaintiff testified that he owns another towing company, Quinn's Towing, which remains on the Hart Post's No-Preference List.  (Ex. 5, p. 24).  The

fact that another of Plaintiff's towing companies remains on the Hart Post's No-Preference List indicates an absence of personal animus towards Plaintiff, and demonstrates that Eagle Towing was removed for violating Official Order 48. Therefore, Defendants are entitled to qualified immunity for Plaintiff's equal protection claim.

> ### C.  Plaintiff did not have a protected property interest in Eagle Towing remaining on the No-Preference Lists, and cannot demonstrate that any clearly established right to procedural due process was violated.

"In order to establish a procedural due process claim in a § 1983 action, 'plaintiffs must establish three elements: (1) that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment ..., (2) that they were deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest.'" *Med Corp. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002), quoting *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999), *cert. denied*, 529 U.S. 1020 (2000). The U.S. Supreme Court has provided a three-factor balancing framework to assess the constitutional adequacy of the procedures used when an individual is entitled to due process:

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the

function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

"Property interests . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). "The question of whether a benefit was conferred is not merely a question of whether the law, in fact, caused some benefit to accrue to the plaintiff." *Am. Premier Underwriters, Inc. v. Nat'l R.R. Passenger Corp.*, 709 F.3d 584, 594 (6th Cir. 2013). "The mere unilateral expectation of continuing to receive a benefit is not enough to create a protected property interest; instead a 'legitimate claim of entitlement' must exist." *Lucas*, 203 F.3d at 978, quoting *Roth*, 408 U.S. at 577. "[I]f the government has the discretion to rescind the benefit entirely, there is no property interest." *Am. Premier Underwriters*, 709 F.3d at 595, citing *EJS Props.*, 698 F.3d at 856–57.

In *Lucas*, a sheriff's department removed a towing company from its towing company rotation stand-by call list after the owner of the towing company publicly critiqued the sheriff. 203 F.3d at 971. Although the plaintiffs sufficiently alleged a First Amendment retaliation claim, the Sixth Circuit affirmed the district court's dismissal of the plaintiffs' procedural due process claim, holding that the plaintiffs lacked any protected property interest in remaining on the towing stand-by list. *Id.* at 978. In *Wright*, the Eastern District of Michigan followed *Lucas* in holding that a towing company did not have a protected property interest in its placement on Genesee County's No-Preference List. *Wright*, 659 F. Supp. 2d at 849. And in *City*

*of Lima*, the Sixth Circuit held that a company providing ambulance services did not possess a protected property interest in receiving 911 dispatches from the City. 296 F.3d at 409.

Here, Plaintiff cannot meet the first step in the due process analysis because he lacks a property interest in remaining on the Hart and Rockford Posts' No-Preference Lists. While Official Order 48 provides certain requirements for towing companies on the No-Preference Lists, MSP Post commanders have the option of establishing a No-Preference List or contracting with local towing companies—a commander could decide to discontinue use of a No-Preference List at any time. (Compl., R. 4, Page ID # 97.) Furthermore, MSP members may deviate from the explicit requirements of the Official Orders with prior approval. (Ex. 1). Because MSP "has the discretion to rescind the benefit entirely, there is no property interest" in continued placement on the No-Preference List. *Am. Premier Underwriters*, 709 F.3d at 595.

Even if Plaintiff could establish that Defendants violated his rights to procedural due process, Defendants are nevertheless entitled to qualified immunity because such rights were not "clearly established." The Sixth Circuit has recognized that "[a] clearly established constitutional violation requires on-point, controlling authority or a 'robust consensus of cases of persuasive authority.'" *Ortega v. U.S. Immigration & Customs Enf't*, 737 F.3d 435, 439 (6th Cir. 2013), quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). "The Supreme Court recently reminded [courts] that a plaintiff must identify a case with a similar fact pattern

that would have given 'fair and clear warning to officers' about what the law requires." *Arrington-Bey*, 858 F.3d at 993, citing *White v. Pauly*, 137 S.Ct. 548, 552 (2017). In other words, "the unlawfulness must be apparent" from existing precedent. *Anderson*, 483 U.S. at 640. Here, *Lucas* and *City of Lima* have not "placed the . . . constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741. Therefore, Defendants are entitled to qualified immunity as to Plaintiff's procedural due process claim.

### D. Plaintiff cannot show that Defendants conspired to violate his clearly established constitutional rights.

"A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003), quoting *Hooks v. Hooks,* 771 F.2d 935, 943–44 (6th Cir. 1985). In order to establish a Section 1983 conspiracy, Plaintiff must show "that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011), quoting *Spadafore,* 330 F.3d at 854.

Here, there has been no evidence of any agreement or coordination between the Defendants, or between Defendants and third parties, to remove Eagle Towing from the No-Preference Lists. As commanders of their Posts, Defendants each had sole authority under Official Order 48 to remove a towing company from his respective Post's No-Preference List. (Ex. 12, p. 4). Defendants merely kept each other apprised of their decisions. The same day he sent a letter to Eagle Towing

16

regarding its removal from the Hart Post's No-Preference List, Defendant White sent an email to Roesler informing him of that decision and copied various MSP and local law enforcement officials, including Defendant McIntire.  (Ex. 10).  Defendant White testified that he notified Defendant McIntire of his decision because of their Posts' adjacent jurisdictions, but that he did not advise Defendant McIntire to remove Eagle Towing from the Rockford Post's No-Preference List.  (Ex. 2, pp. 103-105).  Informing one another of their decisions to remove Eagle Towing does not establish that Defendants "acted in concert" in doing so.  *Spadafore,* 330 F.3d at 854.  Consequently, Defendants are entitled to qualified immunity for Plaintiff's conspiracy claim.

## CONCLUSION AND RELIEF REQUESTED

Defendants White and McIntire respectfully request that this Court (1) grant qualified immunity, (2) dismiss with prejudice all claims against Defendants, and (3) grant any other appropriate relief.

Respectfully submitted,

Dana Nessel
Attorney General


s/Patrick S. Myers
Patrick S. Myers (P81444)
Assistant Attorney General
Attorney for Defendants
Complex Litigation Division
P.O. Box 30736
Lansing, MI  48909
517.335.3055
myersp4@michigan.gov
P81444

Dated: March 29, 2019

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 29, 2019, I electronically filed the foregoing paper

with the Clerk of the Court using the ECF system which will send notification of

such filing of the foregoing document as well as via US Mail to all non-ECF

participants.

_s/Patrick S. Myers_
Patrick S. Myers
Assistant Attorney General
Attorney for Defendants
