IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

| | |
|---|---|
| JOHN HEYKOOP D/B/A EAGLE TOWING,<br><br>    Plaintiff,<br><br>v<br><br>FIRST LIEUTENANT JEFFREY WHITE; FIRST LIEUTENANT CHRIS MCINTIRE.<br><br>Defendants. | Case No.: 1:18-cv-00632<br><br>Hon. Robert J. Jonker<br><br>Mag. Phillip J. Green |

_____/

| | |
|---|---|
| John S. Brennan (P55431)<br>Christopher S. Patterson (74350)<br>FAHEY SCHULTZ BURZYCH RHODES PLC<br>Attorneys for Plaintiff<br>4151 Okemos Road<br>Okemos, Michigan 48864<br>Tel: (517) 381-0100<br>Fax: (517) 381-5051<br>jbrennan@fsbrlaw.com<br>cpatterson@fsbrlaw.com | Patrick S. Myers (P81444)<br>Assistant Attorney General<br>Attorney for Defendants<br>Complex Litigation Division<br>P.O. Box 30736<br>Lansing, MI   48909<br>Tel: (517) 373-6434<br>myersp4@michigan.gov |

_____/

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS JEFFREY WHITE AND CHRIS MACINTIRE'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Defendants White and McIntire (collectively "Defendants") have filed a Motion for Summary Judgment that is essentially a rehash of their earlier-filed Motion to Dismiss, which this Court has already denied. As Plaintiff's Brief in

1

Support of his Motion for Partial Summary Judgment demonstrates, the facts developed in discovery – in particular the depositions of Defendants – make it even clearer that Defendants are not entitled to the qualified immunity they assert.

## ISSUE PRESENTED

Defendants present only one issue in their motion: whether this Court should grant qualified immunity to them as to Plaintiff's claims. For the reasons stated below, this Court should ***not*** grant qualified immunity to Defendants.

## COUNTER-STATEMENT OF FACTS[1]

Most of the facts relevant to Plaintiff's opposition to Defendants' motion have already been set out in Plaintiff's own motion for Partial Summary Judgment. For brevity and efficiency purposes, this brief will address only facts that Defendants have stated incompletely, out of context, or in manner that Plaintiff believes is misleading.

### A. *Official Order 48*

Defendants' references to Official Order 48 are accurate. However, Defendants' fail to acknowledge any of its provisions that address procedures set out in case of alleged complaints against a tow operator, which they were obligated to follow. They neglect to mention that Official Order 48 explicitly requires that all

---

[1] This brief's references to Exhibits are from Plaintiff's and Defendants' briefs in support of their motions. "Plaint. Ex" refers to exhibits from Plaintiff's brief, and "Def. Ex." refers to exhibits from Defendants' brief.

towing companies be treated equally. And while they point out that the Preamble to the Order states an exception as to when Official Orders "shall" be followed, they fail to supply any proof, or even allege, that the Director deemed it to be in the best interest of the Michigan State Police ("MSP") not to follow Official Order 48 in this matter.

## B. "Numerous Complaints"

Defendants continue to make the embellished contention that they either received (or the amorphous "became aware of") "numerous" complaints about Eagle Towing's service, employees and charges within their jurisdiction. Defendants' own citations to the record demonstrate that this suggestion is vacuous.

Defendant White testified that he had no written complaints (Def. Brief, Ex. 2, p.50), and makes no references to numerous complaints or to any complaint in particular, stating only: "People that have complained to me . . ." Defendant White fails to point out that although he began his deposition asserting that there were "seven, eight, nine, ten" complaints, he later admitted under oath that he could remember only three: one in 2017 and two complaints in the previous year. (Plaint. Ex. 3, Dep. pp. 91, 176). More importantly, Defendant White admits that his decision was actually based on the communication he received from Oceana County Sheriff Craig Mast, involving no verification, investigation, or substantiation other than a letter complaining about a towing charge, and not the service Eagle Towing

3

provided. (Plaint. Ex. 5; Ex. 3, Dep. 100-102). Yet White disavowed excessive towing charges as the basis for his removal of Eagle Towing from the no-preference list. (Ex. 3. Dep. p. 178).

Defendant McIntire's explanation is no more helpful. He cites to pages from his transcript that are cited in Plaintiff's brief. He had one "resolved" complaint in 2014, (*three years* before his decision to remove Eagle Towing from the no-preference list) transmitted to him verbally by Trooper Hugh Welsh. This was the ***only complaint he ever dealt with personally***. The other complaint was relayed verbally to him from Trooper Phil Marshall, "several years" ago. (Def. Ex. 3. Dep. pp. 57-58). As noted in Plaintiff's Brief in Support of Partial Summary Judgment, McIntire also referred to a television news item that he didn't even claim he watched. His knowledge is best expressed by his use of the phrase "it's known or heard of that Eagle Towing overcharges people." (Def. Ex. 3. Dep. p. 19) As noted in Plaintiff's initial brief, McIntire had no documented basis for his action:

> Q: Okay. So if you had contacted Eagle Towing, for example, to say, "Look, I'm going to take you off the list because I have a complaint," and he said, "Well, where's the complaint; did someone file something," you would say, "I don't have anything"?
> **A. Correct.** (Plaint. Ex. 8 Dep. p.74)

## C. Reasons for Termination

Defendants' account of their reasons for taking Eagle Towing off of the no-preference list are examples of self-contradiction and at odds with their testimony.

4

For example, Defendant White (Def. Brief, p. 3-4) claims that Eagle Towing was removed due to the "quality and type of service" that Eagle Towing provided in the Hart Post area, asserting that Eagle Towing was "uncooperative in responding to complaints lodged by citizens and law enforcement agencies." Defendant White failed to identify one instance of such non-cooperation and didn't even identify this reason in his answers to Interrogatories. (Def. Ex. 2, p. 24). And contrary to the assertion in his brief, Defendant White admitted that ***he could not recall any written complaints that he acted on with respect to Eagle Towing's alleged lack of professional and courteous conduct*** under Official Rule 48. (Def. Ex. 2, p. 50). He admitted instead that he had ***no personal knowledge that Eagle Towing was out of compliance with Official Order 48's requirement regarding professional and courteous conduct.*** (*Id.,* p. 51.) Moreover, Defendant White admits that he did not base his decision on Official Order 48 at all (having admitted over and over that he was never in compliance with Official Order 48 himself).

Defendant White testified that, rather than using Official Order 48, he was proceeding under the local 911 policy regarding no-preference lists, which he admitted did not address itself to towing rates. (Plaint. Ex. 3 Dep. p. 95). Yet curiously, he claims that his decision was based upon the fact that Eagle Towing would not discuss its rates with customers. (*Id*. at 95-96.) In addition, the only written complaint, which Defendant White received indirectly through Sheriff Mast,

5

and allegedly relied upon by Defendant White, failed to mention anything about Eagle Towing's failure to communicate with customers. (*Id.* p. 102)

Defendant McIntire's explanation for removing Eagle Towing from the no-preference list is even more perplexing. He claims (Def. Brief, p. 4) that his action was based on "complaints he had received or become aware of regarding Eagle Towing's charges." He asserts that Eagle Towing violated Official Order 48's requirement that reasonable rates based on local industry standards be used. However, Defendant McIntire: 1) did not follow Official Order 48 in his office; (Plaint. Ex. 8 Dep. pp 66-67), 2) had not received a complaint from a member of the public in his office about Eagle Towing's rates since 2014; (Plaint. Ex. 8 Dep. p. 15) and 3) ***declared himself unable and unqualified to determine what a reasonable rate for any particular towing job would be*** (Plaint. Ex. 8 Dep. p. 80). Defendant McIntire also based his decision partially on the fact that Defendant White had made the same decision "after an investigation." (Def. Brief p. 4) But Defendant White conducted no investigation whatsoever, and unlike McIntire, did not base his decision on Eagle Towing's rates.

Finally, Defendants admit in their brief that the Hart Post (and the Michigan State Police in general) was made aware of the allegations that Sheriff Mast's friend, Robert Wilson, the former Police Chief for the Village of Shelby, had been embezzling. The Michigan State Police conducted that investigation. Defendants'

6

carefully worded account does not deny that either Defendant had knowledge that John Heykoop and Eagle Towing had made the initial report to the Village's Administrator, Chelsea Stratil. Neither Defendant submitted an affidavit that they were unaware of this fact.

## ARGUMENT

### I. A Material Issue of Fact Exists Regarding Plaintiff's First Amendment Retaliation Claim.

Defendants admit that they were not privileged to remove Eagle Towing from the no-preference list because of Heykoop's constitutionally protected speech. (Def. Brief p. 9) Defendants make much out of the fact that Administrator Stratil did not identify Heykoop as the person informing her of Chief Wilson's embezzlement when she made her initial report to the Hart Post. But it is a matter of public record that the report was made to the Hart MSP Post and that the MSP conducted an investigation of Wilson leading to his conviction. Heykoop is not required to prove that he identified himself directly to Defendant White or Defendant McIntire as the informant.

The timing of the Defendants' action was close in time to Wilson's conviction and sentencing, and it followed within a month of receipt of an email from Sheriff Mast. It is clear that but for Sheriff Mast's email, no action would have even been contemplated. Neither Defendant has offered an affidavit to the effect that they were not aware of Heykoop's role in the Wilson matter. That silence is deafening. Given

7

the fatuous explanations for their decisions to summarily remove Eagle Towing from the no-preference list, Heykoop is entitled to argue the reasonable inference that Mast's communication was a request to assist him in retaliation. Both Defendants jumped to help without so much as a cursory investigation. A genuine issue regarding a material fact, i.e., whether Defendants' conduct was motivated at least in part by Heykoop's protected conduct, exists. Defendant's motion on this issue must be denied.

**II.     Defendants Violated Heykoop's Right to Equal Protection by Treating His Towing Service Differently Than Other Towing Services on their No-preference lists, and Lacked a Rational Basis for Their Conduct.**

Heykoop's response to Defendants' motion on this point is largely covered in Plaintiff's Brief in Support of his Motion for Partial Summary Judgment. Heykoop has demonstrated that neither Defendant had a conceivable basis which might support their action. Not only were their actions based upon hearsay for which no investigation was ever conducted, but their stated reasons cannot possibly be true.

Defendant White claims that he did *not* remove Eagle Towing because of high rates, because the policy he was following (Oceana-Mason 911's policy) did not permit removal due to rates. Yet he claims that his decision was based on the fact that Eagle Towing would not discuss its rates with customers over the phone, but that it would work with insurance companies. Not only is this self-contradicting,

but his reasoning is exposed as groundless, because the only documented complaint he relied upon failed to even mention this point, and he never investigated it himself.

In contrast, Defendant McIntire claims that he ***did*** remove Eagle Towing because of high rates. Like Defendant White, McIntire engaged in no investigation. More significant, however, is Defendant McIntire's blunt admission that he is unqualified and unable to even determine what a reasonable rate would be in any given situation. Television "exposes" notwithstanding,[2] McIntire could not have removed Eagle Towing for unreasonable rates, because he had, and has, no way of determining what those should be.

### III. Heykoop Has a Protected Property Interest in Eagle Towing's Placement on the No-Preference List, and a Clearly Established Right to Procedural Due Process was Violated.

Defendants' Due Process Argument is a mere repetition of the argument they made in their Motion to Dismiss, also based on governmental immunity. The Court ruled against Defendants and nothing has changed in the case to alter that ruling. Property interests protected by procedural due process extend well beyond traditional notions of "property" such as chattels, real property, and money. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571–72 (1972). In the specific context of no-preference lists, a property right to remain on a no-preference list exists

---

[2] It bears mentioning, that McIntire admitted that another towing company was also featured in the "expose" as allegedly charging high rates, but nothing was done about that towing company.

9

when there are established procedures for the suspension or removal of towing services from such a list. *Lucas v. Monroe County*, 203 F.3d 964, 978 (6th Cir. 2000). Courts have specifically held a constitutionally-protected property interest exists in remaining on a no-preference list where there are established procedures for removal from a list. *Gregg v. Lawson*, 732 F Supp. 849, 853 (ED Tenn. 1989).

Defendants' attempts to distinguish this case utterly fail. They assert that their posts were not required to establish no-preference lists, and that they could have contracted with a towing company instead. But the fact is that they ***did*** establish the lists and those lists were governed by Official Order 48. Defendants could not be heard to assert that there would be no property right if Eagle Towing had a contract with MSP, because they could have established a no-preference list instead. The argument lacks internal logic.

Defendants also argue that "MSP members may deviate from the explicit requirements of the Official Orders with prior approval." This characterization of the Official Order Preamble is disingenuous. The Preamble permits deviation only if permitted by the Director of the Michigan State Police, and only if not following the Official Order is in the best interest of the MSP. Defendants make no such showing or that such a showing could have been made in this case.

Finally, where there is a policy that establishes the right to be placed on a no-preference towing list, Sixth Circuit precedent holds that the law requires Due

10

Process. The right was clearly articulated and explained in the context of no-preference towing lists in *Lucas v. Monroe County*, 203 F.3d 964, 978 (6th Cir. 2000):

> "The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interest that a person has already acquired in specific benefits." Board of Regents of State Colleges v. Roth, 408 US 564, 576, 92 SCt 2701, 33 LEd2d 548 (1972). The mere unilateral expectation of continuing to receive a benefit is not enough to create a protected property interest; instead a "legitimate claim of entitlement" must exist. Id. at 577, 92 SCt 2701. "[A] property interest exists and its boundaries are defined by 'rules and understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" Bailey v. Floyd County Bd. of Educ., 106 F3d 135, 141 (CA6 1997) (quoting Roth, 408 US at 577, 92 SCt 2701).
>
> In the instant case, however, Plaintiffs can point to no ordinance, contract or other "rules of mutually explicit understandings" that support their claim of entitlement to remain on the stand-by list. See Perry v. Sindermann, 408 US 593, 601, 92 SCt 2694, 33 LEd2d 570 (1972). The only relevant policy on record, in place since 1991, expressly states that a wrecker service will be removed from the call list upon filing a complaint with an unauthorized person. Plaintiffs' reliance on Gregg v. Lawson, 732 FSupp 849 (ED Tenn 1989), is misplaced. In Gregg, the court held that the plaintiff had a "legitimate claim of entitlement" in remaining on the wrecker tow list, on grounds that "several references to and procedures for removal or suspension from the list to compel compliance with the regulations reflect the mutual nature of the relationship established by inclusion on the list." Id. at 853. In this case, there are no such established "procedures" for suspension or removal.

Heykoop can obviously point to "rules of mutually explicit understandings" that support his claim of entitlement to remain on the Defendants' no-preference lists: Official Order 48 and the Oceana-Mason 911 policy.  It is hard to imagine a

11

case that deals with a factual issue (placement on no-preference towing lists) more closely to this case than *Lucas*. Fair and clear warning was evident in both the caselaw and in the order that Defendants were duty-bound to follow.

### IV. The Undisputed Evidence Clearly Establishes that the Defendants Engaged in a Civil Conspiracy.

Heykoop respectfully refers the Court to his arguments in his Brief in Support of Partial Summary Judgement in response to Defendants' arguments on this issue.

### CONCLUSION

For the reasons state above, Plaintiff Heykoop respectfully requests that this Court deny Defendants' motion and grant his Motion for Partial Summary Judgment pursuant to Federal Rule of Civil Procedure Rule 56.

                                      Respectfully submitted,

Dated: April 29, 2019              /s/ John S. Brennan
                                      John S. Brennan (P55431)
                                      Fahey Schultz Burzych Rhodes, PLC
                                      Attorney for Plaintiff
                                      4151 Okemos Road
                                      Okemos, Michigan 48864

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 29, 2019 I electronically filed the forgoing paper with the Clerk of the Court using ECF system which will send notification of such filing on the attorneys of record.

/s/ Adrienne Monahan_____
Adrienne Monahan
Fahey Schultz Burzych Rhodes PLC
4151 Okemos Road
Okemos, Michigan 48864
(517) 381-3202
amonahan@fsbrlaw.com